## W. R. ALBRITTON v. FIRST NATIONAL BANK OF MEXIA.

### Decided April 1, 1905.

**1.—Real Estate Broker—Right to Commissions.**

Where the owner of land holds himself out as having a good title and engages a broker to sell, and the broker procures a purchaser and brings the seller and purchaser together, and a definite and binding written contract is entered into between them to consummate the sale, upon the terms and price demanded by the seller if the title is good, the broker is entitled to his commissions, although no sale is effected because of a defect in the title.

**2.—Same—Contract of Sale—Title to be Passed Upon.**

The owner impliedly warranted the title to the land when he employed the broker to sell it, and a provision in the contract of sale, that the title was to be passed on by the purchaser's attorney, did not affect the broker's right to his commissions.

**3.—Same—Failure to Make Clear Title.**

Where a part of the land contracted for sale consisted of an undivided one half of a tract of 36 acres, and the seller agreed to have this land partitioned and to put the buyer in possession of the 18 acres he owned, the latter could refuse to complete the trade until this was done, and it was not a compliance with the agreement that the seller ran a division line and offered to fence the 18 acres off, without any agreement with the joint owner, who was in possession.

**4.—Charge—Endorsement by Judge—Practice on Appeal.**

Unless a special charge shows by the endorsement of the trial judge, and as required by the statute, whether it was given or refused, it will not be reviewed on appeal on the assumption that it was given.

Appeal from the County Court of Limestone. Tried below before Hon. James Kimbell.

*Laurence Treadwell* and *A. B. Rennolds,* for appellant.—1. A broker is entitled to his compensation when he procures a purchaser with whom his principal is satisfied and who actually contracts for the property at a price satisfactory to the owner, and his right to same is not affected by any subsequent disagreement between his principal and the purchaser; and this though such disagreement may result in a cancellation of the contract. Conkling v. Krakauer, 70 Texas, 739; Gibson v. Gray, 17 Texas Civil, 653, 43 S. W. Rep., 925; Mattingly v. Pennie, 45 Am.

St. Rep., 87; Ward v. Cobb, 12 Am. St. Rep., 587, and cases cited: Kelly v. Baker, 28 Am. St. Rep., 540, and cases cited.

2.   When a broker has produced a purchaser ready, willing and able to buy upon terms and at a price fixed by the seller, he has discharged his duty, and is entitled to his compensation, regardless of whether the sale is ever consummated or not, if the failure to consummate the trade is not the fault of the broker.   Gibson v. Gray, 17 Texas Civ., 653, and authorities cited.

3.   A broker can not be deprived of his commission because his principal loses the sale on account of his inability to give possession to the land, or a part thereof.   Reed v. Thompson, 30 S. W. Rep., 248.

4.   A broker employed to sell real estate becomes entitled to his commission when he finds a purchaser satisfactory to his employer and they enter into a mutual contract of purchase and sale, though it subsequently turns out that purchaser is unable to comply with his contract, or on account of any dispute or disagreement about the title between the buyer and seller, the buyer should refuse to consummate the trade by acceptance of deed and payment of money to seller.   Kelly v. Baker, 28 Am. St. Rep., 542; Ward v. Cobb, 12 Am. St. Rep., 587, and cases cited in notes; Mattingly v. Pennie, 45 Am. St. Rep., 83, and cases in notes; Parker v. Walker, 86 Tennessee, 566, citing 91 Texas, 534.

*Harper & Harper,* for appellee.—1. Before a broker would be entitled to commission he must first show that he procured and presented a purchaser who was ready, able and willing to buy the land, and who made or offered to make a binding contract to purchase subject to no future contingency, and an agreement to buy the land provided an attorney says the title is good is not such an agreement as will constitute the party a purchaser in law, and entitle the broker to a commission.   Brackenridge v. Claridge, 91 Texas, 527; Smye v. Groesbeeck, 73 S. W. Rep., 972; O'Brien v. Gilliland & Armstrong, 4 Texas Civ. App., 40; Stitt v. Huidekoper, 84 U. S., 398, 21 Law Ed., 648; Gilchrist v. Clarke, 8 S. W. Rep., 573; Aigler v. Carpenter, 33 Pac. Rep., 593; Hammon v. Crawford, 66 Fed. Rep., 425; Tombs v. Alexander, 3 Am. Rep., 351.

2.   If only a conditional sale of land is made and the seller is not in fault but is ready and offers to comply with the terms of the agreement and make deed, and the prospective purchaser takes advantage of the condition made at the time the agreement was entered into and refuses to complete the trade and purchase the land, and avoids the sale on such condition, the broker is not entitled to his commission—such purchaser in law would not be one who was ready, willing and able to buy.   Smye v. Groesbeeck, 73 S. W. Rep., 972; Brackenridge v. Claridge, 81 Texas, 527; Butler v. Baker, 33 Am. St. Rep., 897, and authorities there cited; Richards v. Jackson, 31 Md., 250, 1 Am. Rep., 49; Kimberly v. Henderson, 29 Md., 512; Hyams v. Miller, 71 Ga., 618; Iselin v. Griffith, 62 Iowa, 671; Hale v. Kumler, 85 Fed. Rep., 165, 54 U. S. App., 694.

3.   Where the owner of land turns it over to a broker to make a sale on certain terms, and the broker turns it over to a sub-agent or broker, and the sub-agent or broker selects a prospective purchaser, and the

broker and sub-broker deal exclusively with the prospective purchaser and the owner never sees him and has no dealings direct or indirect with the prospective purchaser, it is incumbent upon the brokers to show that they had procured a purchaser ready, willing and able to buy, and if no sale is consummated, that it fails through fault of the owner and not through fault of the prospective purchaser whom they alone saw and with whom they entered into all agreements that were made. Brackenridge v. Claridge, 91 Texas, 534; Butler v. Baker, 33 Am. St. Rep., 898, and authorities cited on page 899; Mechem on Agency, pp. 964, 965, 966.

TALBOT, ASSOCIATE JUSTICE.—Albritton sued, appellee in the Justice's Court of Limestone County for $150, alleged to be due him on a contract for the sale of land. From an adverse judgment in the Justice's Court appellant appealed to the County Court, where the cause was again tried, resulting in a verdict and judgment against him, and he has appealed to this court.

Appellant was employed through appellee's agent and attorney, J. O. Harper, as a broker to sell certain lands owned by appellee, in Navarro County, Texas. It seems that appellant wrote to appellee in regard to the sale of the land, and his letter was by the bank turned over to Harper for an answer. October 29, 1902, Harper wrote Albritton, the appellant, the terms upon which appellee would sell the land, and stating therein "they to pay you $150 for making the trade." Appellant secured A. C. Williamson as purchaser of the land, and brought him and J. O. Harper, appellee's agent, together for the purpose of effecting a sale. The negotiations between appellant, Williamson and Harper resulted in the execution by A. C. Williamson, in his own right, and J. O. Harper in behalf of the appellee bank, of the following contract: "Kerens, Texas, November 15, 1902. The First National Bank of Mexia sells to A. C. Williamson 340½ acres of land at $16 per acre; $500 cash; $500 first day of January, 1903; balance to be divided in five annual notes (payable January 1, of each year), title to be passed on by A. C. Williamson's attorney.

(Signed)    A. C. Williamson,
J. O. Harper,
Attorney for Bank."

This instrument was drawn up by appellant in the presence of Williamson and Harper, and it appears by parol evidence in the record that Williamson insisted on the clause going in the contract that the title to the land should be passed on by his attorney and refused to pay anything until that was done. There is uncontradicted testimony that Harper stated that the bank had a good and perfect title to the land, and that Williamson and Harper put in the hands of appellant $100 each under an agreement that if Williamson's attorney pronounced appellant's title to the land good he would pay the money as agreed and take the land and the bank would make the deed; and if Williamson's attorney did not pass the title as good, both parties would take down their money.

We think it may be stated as settled law that where the owner of

land holds himself out as having a good title and engages a broker to sell same, and the broker procures a purchaser of the land and brings the seller and purchaser together and a definite and binding written contract is entered into between them to consummate the sale, upon the terms and price demanded by the seller, if the title is good, the broker is entitled to his commissions, although no sale be effected because of a defect in the title. The rule is founded upon the principle that in such case the broker has performed his obligation, "for if the title is good, the principal may enforce the contract of sale; if bad, the failure to consummate the transaction is attributable to his own fault." Brackinridge v. Claridge & Payne, 91 Texas, 527; Conkling v. Krakauer, 70 Texas, 735; Parker v. Walker, 86 Tenn., 566, and cases cited therein. Appellee impliedly warranted the title to the land in question when it employed appellant to sell it, and the provision in the contract set out above, "title to be passed on by A. C. Williamson's attorney," does not materially alter the legal status of appellant and appellee respecting the transaction in question. Appellant asserted that its title to the land had been passed upon by one of the best lawyers in Limestone County; declared it was good, and relied upon its validity in the contract of sale, effected through the efforts of appellant, to Williamson. The testimony does not tend to show that appellant's right to compensation was made to depend upon a perfect title in appellee, or the carrying out on its part of the promises made to Williamson.

The agreement signed by Williamson, the proposed purchaser, and J. O. Harper as the representative of the appellee bank, the seller in this case, was a definite and binding contract to complete the sale. The purchaser was satisfactory to the seller, and the terms and price upon which the seller proposed to sell were fixed in said contract. In such case it is said in Conkling v. Krakauer, supra, that a broker is entitled to his compensation, and in effect, whether the sale was ever consummated or not, the failure to consummate not being the fault of the broker. There is nothing in the evidence tending to show that the clause, "title to be passed on by A. C. Williamson's attorney," was not inserted in good faith for the purpose of securing a good title. It is shown by the undisputed evidence that eighteen acres of the 340½ acre tract to be conveyed was an undivided one-half of thirty-six acres owned by appellee and one Westbrook. Williamson testified, which was not denied, that Harper, in making the trade, agreed to bring suit against Westbrook and partition the thirty-six acres and put him in possession of the eighteen acres of same; that Westbrook had refused to give possession of any part of it, and Harper proposed to just fence off eighteen acres; that he, appellant, did not want to take the land that way and have a law suit with Westbrook. The evidence further shows that the partition suit was not brought; that no partition thereof was made and offer made to put Williamson in possession of any specific eighteen acres of the thirty-six acre tract. That for this reason Williamson refused to pay the money, execute the notes and accept a deed to the land, as provided in the contract of sale. Harper says he told Williamson that a division line of the thirty-six acres had been run and ratified, and there was no necessity for the partition

suit, but it does not appear, so far as we have been able to find from a close inspection of the record, that such a line had been ratified by Westbrook, the joint owner and only person authorized to ratify it. All we have been able to find in the record bearing upon the question is the statement of Harper in which he says he told Williamson the line had been ratified. By whom, when, where and how ratified, does not appear. As opposed to the statement of Harper referred to, we find that Mr. J. M. Long, vice-president of appellee bank, testified: "The Westbrook thirty-six acres is still undivided, and he is in possession of it all." Unless the line run was, by agreement of the joint owners of the land or with a full knowledge of its location, adopted by them as a division line, a parol partition of the land is not shown. The statement of Harper to Williamson that it had been ratified and an offer to fence off eighteen acres, was not sufficient to satisfy the legal right of appellant to have the thirty-six acres partitioned. Mr. Prince, of the firm of McClellan & Prince, was consulted as to appellee's title, and Williamson, without contradiction, testifies that Prince advised him not to consummate the sale, unless a partition of the thirty-six acres was made.

We think, under the facts and circumstances of the case as they appear from the record before us, that Williamson was authorized to insist upon the partition of the thirty-six acres. He was buying a specific 340½ acres of land, of which he could take actual possession and freed from any interest of any other person. Without the partition insisted upon he could not get what he had contracted to buy insofar as eighteen acres of the land tendered him was concerned. Just what part of the thirty-six acres he would get by his contract he could not tell, unless the division was made. This he was entitled to know before he was required to complete the sale. Appellee had agreed to make the partition and refused to do so. Neither appellant nor Williamson was responsible therefor. Upon the whole case, we conclude the evidence was insufficient to authorize the verdict of the jury and that the judgment of the lower court must be reversed and the cause remanded.

Should it appear on another trial that appellant is entitled to recover, the amount of his recovery, whether $150, as claimed by him, or a less sum, as claimed by appellee, in view of the reduction of the price of the land, from that at which it was offered originally, will depend upon the proof bearing upon that question.

It does not appear from the record whether the special charge made the basis of appellant's second assignment of error was given or refused by the presiding judge. It bears the file mark of the clerk, but there is no endorsement thereon, signed by the judge that it was given. The statute requires, when a special instruction is asked, that the judge shall note thereon whether he gives or refuses it. In the absence of an endorsement, showing that the charge in question was given, we can not assume that it was given and determine whether or not, as applicable to the facts of this case, there was error in it. If, however, upon another trial a similar charge is called for by the facts, the error complained of here, if error, is not likely to occur again.

For the reason stated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*