## W. A. LUCAS & CO. v. THOMPSON et al.
### No. 1160—5461.

Commission of Appeals of Texas, Section B.
June 25, 1930.

Taylor, Atkinson & Farmer and Neff, Hale & Neff, all of Waco, for plaintiff in error.

Trippet, Richey & Sheehy, of Waco, Mr. & Mrs. C. S. Bradley, of Groesbeck, and King, Mahaffey & Wheeler, of Texarkana, for defendants in error.

SHORT, P. J.

In this case the plaintiff in error, W. A. Lucas, doing business under the firm name of W. A. Lucas & Co., as a real estate broker, sued Floyd Thompson and R. T. Bell, claiming commissions for negotiating a contract between Thompson and Bell for the exchange of certain properties. There was a trial to a jury, wherein special issues were submitted, after Lucas had requested a peremptory charge in his favor, which had been refused, in which the jury found a verdict on each of the issues, as follows:

(a) That Bell declined to complete the contract with Thompson because the abstract furnished him failed to show a merchantable title;

(b) That Thompson did not represent to Lucas, prior to the time said exchange contract was signed, that he had a good and merchantable title to his ranch;

(c) That the reasonable market value of the property to be conveyed to Lucas by Thompson, as part of his commission, was $2,000.

The trial court thereupon rendered judgment that Lucas take nothing either against Thompson or Bell. The case was properly appealed to the Court of Civil Appeals at Waco, where the judgment of the trial court was affirmed. 15 S.W.(2d) 123.

It appears, without contradiction, from the opinion of the Court of Civil Appeals that while Bell had a marketable title to the property he proposed to exchange, Thompson did not have such a title, and in the contract between Thompson and Bell there is a provision that an abstract should be furnished by each party, showing a marketable title to the property claimed by the respective parties. The Court of Civil Appeals finds, as a fact, that a large portion of Thompson's property, consisting of a ranch of about 14,000 acres, made up of several adjacent tracts of land, was held by Thompson under a limitation title which had not been adjudicated, and the trial court, in its charge, instructed the jury that one holding land under a limitation title, unadjudicated, did not have a marketable title. No objection was presented to the court to the giving of this instruction, which we think was a correct one.

While the pleadings of the parties, as well as their testimony, presented the issue whether, before the contract between Thompson and Bell was signed, Lucas and Thompson had a new and specific oral agreement by the terms of which it was expressly provided that in the event said proposed contract was signed, Lucas should accept in full for his commission a certain sum of money in cash, and that Thompson should convey to Lucas title to one

of the pieces of property which was to be conveyed to him by Bell in consummating the exchange, we do not find it necessary to discuss this phase of the case, notwithstanding the opinion of the Court of Civil Appeals seems to have based in part its opinion upon the finding of the jury on this issue.

Lucas asserted his right to recover commissions from Bell upon the theory that both Thompson and Bell knew that he (Lucas) had been employed by the other and was to receive compensation from each of them for his services, and that Thompson and Bell, after he had performed these services, had voluntarily released each other from the contract each had made with the other, claiming that the contract was an enforceable one. Since it appears that Bell was not obligated by the terms of the contract to accept the conveyance from Thompson and to execute a conveyance of his property to .Thompson, until Thompson had furnished him with an abstract showing merchantable title to the property he was to receive from Thompson, and since Thompson was unable to furnish this kind of an abstract, there was no obligation on the part of Bell arising from these facts, to pay Lucas anything for his services for the reason that Bell had not received from Lucas anything of value under these conditions. When Lucas offered to exchange Thompson's ranch for property owned by Bell, and Bell accepted this proposition, there was an implied obligation on the part of Lucas that the property he offered in exchange for Bell's property should show a merchantable title in Thompson. This essential element in the agreement between Lucas and Bell to make it a valid one is shown to be utterly wanting. Such being the situation, Lucas has no cause of action against Bell, inasmuch as Thompson was unable to carry out the contract he had made with Bell. The contract made by Lucas with Thompson and that he made with Bell were separate and distinct obligations.

Plaintiff in error alleged that Thompson listed with him for sale and exchange certain ranch property in Erath county on April 28, 1925, and agreed in writing to pay him a commission if he should sell or effect a trade of said property, and furthermore alleged that in the early part of 1925 Bell listed with him certain of his property in Limestone county for sale or exchange and agreed to pay him a commission for effecting a sale or trade of the same, and that by his (Lucas') procurement Thompson and Bell had entered into an enforceable contract between them for the exchange of their respective lands, provided that each party should furnish the other with an abstract of title within a reasonable time, showing "good merchantable title, free and clear of incumbrances" except certain incumbrances provided for in the contract. As we have seen, Thompson was unable to comply

with this provision, and Bell was justified in refusing to proceed further with the proposed exchange. When Bell listed his lands with Lucas for sale or exchange, Bell agreed to pay Lucas certain commissions if, and when, the latter furnished him a purchaser for his lands upon terms agreeable to him. In his effort to perform his contract with Bell and earn the agreed commission therefor, Lucas produced Thompson, who entered into an exchange contract with Bell. By this contract Thompson agreed to sell his land to Bell in exchange for Bell's property and agreed to furnish an abstract showing merchantable title thereto. Bell did not default in his obligation, evidenced by the contract with Lucas. Lucas did default by reason of Thompson's inability to convey to Bell a good and merchantable title to the land for the simple reason that Thompson had no such title to convey. Moss v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847; Carruth v. Neutzler (Tex. Com. App.) 295 S. W. 187.

It is contended by Lucas that, under the testimony, he was entitled, as against Thompson, to an instructed verdict in his favor for a certain sum of money, aggregating $3,000, since the testimony showed that, by the terms of the second agreement with Thompson, Lucas should receive $1,000 in cash and a conveyance to him of certain property, the value of which was found by the jury to be $2,000, and that the finding by the jury that Thompson did not represent to him (Lucas), prior to the time the exchange contract was signed, that he had a good and merchantable title to his ranch, was unsupported by any testimony.

The Court of Civil Appeals, in its opinion on this subject, says: "Lucas testified that Thompson told him that his title to his ranch was in first-class shape; that he had had the title examined when he purchased by a competent attorney, * * * and that the title had been passed by two loan companies. Thompson testified in this connection that he told Lucas some of his titles were based on limitation; that Lucas did not raise any objection thereto, but stated in reply that the title to all large tracts of land in Texas was as a rule based partly on limitation." This testimony by the respective parties on this particular phase of the case raised an issue of fact, and the jury, by its verdict, have determined that issue in favor of Thompson. The effect of the finding by the jury, under the testimony quoted above, is that prior to the time the exchange contract between Thompson and Bell was signed, Lucas and Thompson discussed the character of title which Thompson had to his ranch, in which discussion Thompson informed Lucas that some of his titles to this ranch were based on limitation, and that Lucas not only did not raise any objection to handling the ranch

property, after being informed of the kind of title, by which it was held, but stated in connection thereto that the titles to all large tracts of land in Texas were, as a rule, based partly on limitation, apparently recognizing, as a fact, the condition of Thompson's title, afterwards shown by the abstract, and agreeing to handle the business of selling or exchanging the ranch upon the theory that it could be done, notwithstanding a part of the lands were held by limitation title.

This character of contract is governed by the intention of the parties thereto. In the absence of any discussion of the subject, between the parties, and when the contract is clear in its terms, evidencing an agreement by one person to authorize another to sell a piece of property upon certain terms, and the latter procures a purchaser with whom his principal is satisfied, and who actually contracts for the property, at a price satisfactory to the owner, the agent is entitled to compensation, notwithstanding it should thereafter transpire that the title of the principal to the property was not a marketable one. Conkling v. Krakauer, 70 Tex. 735, 11 S. W. 117.

Under the general rule governing such transactions, had there been no discussion of the question between Lucas and Thompson, as to the character of Thompson's title to his ranch, the law would have implied a representation by Thompson to Lucas that his title to the ranch was a merchantable one. Authority to sell realty implies authority to do anything necessary to complete the contract and make it binding, and where one authorizes another to sell lands, on certain conditions, the law implies a representation that the person so giving the authority hold the land by a title legally sufficient to demonstrate, with reasonable certainty that he is the true owner thereof. One who accepts the services of another in procuring a satisfactory purchaser, who actually contracts for the land, at a price satisfactory to the owner, becomes obligated to pay for such services according to the terms of the contract, even though, upon investigation, it should develop that the title by which the party claiming to be the owner of the property is not a merchantable one. Under such circumstances the agent is not deprived of his right to compensation, where, having performed the services contemplated, the sale fails by reason of the owner's fault, such as a defect of title. Birmingham Co. v. Thompson, 86 Ala. 146, 5 So. 473; Sayre v. Wilson, 86 Ala. 151, 5 So. 157; Roberts v. Kimmons, 65 Miss. 332, 3 So. 736; Parker v. Walker, 86 Tenn. 566, 8 S. W. 391.

However, the facts in this case present a situation where, before the exchange contract was signed between Thompson and Bell, Lucas was informed by Thompson that a large part of his ranch lands were held by him under a limitation title, indicating that Lucas may have rendered the services he did render, with knowledge of the very fact on account of the existence of which Bell justifiably refused to carry out the trade which Lucas had arranged between Thompson and him. In the absence of a request by Lucas that the trial court submit the issue in some appropriate form to the jury, whether Thompson informed Lucas before the services were rendered by Lucas that he held a portion of his land by an unadjudicated limitation title, upon a return of the verdict rendered by the jury, the trial judge was authorized to, and it will be presumed he did, find this issue in favor of Thompson, in view of the fact that a judgment was entered in favor of Thompson, based upon the testimony, a portion of which we have quoted from the opinion of the Court of Civil Appeals. R. S. art. 2190.

As we understand the opinion of the Supreme Court in Conkling v. Krakauer, supra, it substantially holds that in the absence of specific representations, alleged to have been made as to the title, the listing of land with a broker for sale, under the circumstances stated in that case, carried with it an implied representation that the owner had a good merchantable title thereto. The principle of law, enunciated in Conkling v. Krakauer, supra, has been approved by the Supreme Court of Massachusetts in Roche v. Smith, 176 Mass. 595, 58 N. E. 152, 51 L. R. A. 510, 79 Am. St. Rep. 348, the Supreme Court of Minnesota in Gauthier v. West, 45 Minn. 192, 47 N. W. 656, and the Supreme Court of Oregon in Kyle v. Rippey, 20 Or. 446, 26 P. 310, and has been followed by the Courts of Civil Appeals of this state in several cases, among which may be noted Gibson v. Gray, 17 Tex. Civ. App. 646, 43 S. W. 922; Sullivan v. Hampton, 32 S. W. 236; Vickrey v. Lefmann, 270 S. W. 880; Hamburger v. Thomas, 118 S. W. 774; Albritton v. First National Bank, 38 Tex. Civ. App. 614, 86 S. W. 646; Berg v. San Antonio Street Railway, 17 Tex. Civ. App. 291, 42 S. W. 647, 43 S. W. 929; as well as by the Supreme Court itself in Brackenridge v. Claridge, 91 Tex. 527, 44 S. W. 819, 43 L. R. A. 593, and in Hamburger v. Thomas, 103 Tex. 280, 126 S. W. 561.

The principle, stated another way, is that where the owner of land holds himself out as having a good title, and the broker procures a purchaser of the land and brings the seller and the purchaser together, and a definite and binding contract is entered into between them, to consummate the sale upon the terms and price agreed to by the seller, if the title is good, the broker is entitled to his commission, although no sale be effected, because of a defect in the title.

We have deemed it proper to make this restatement of the rule, though we hold that it is not applicable in this case, for the reason that the Court of Civil Appeals in its opin-

ion, quoted with approval from 4 R. C. L. 313, to the effect that if the contract of employment contains an express stipulation that the transaction to be negotiated must be consummated in order to entitle the broker to his commission, the defect in his employer's title, preventing consummation, will operate as a bar to a recovery of any compensation, irrespective of whether the broker knew or should have known of the existence of such defect. The Court of Civil Appeals cites many authorities in support of the rule stated in Ruling Case Law, supra. An examination of these authorities will disclose the fact to be that it was the intention of the parties that a commission should not be payable, except and until the transaction, to be negotiated, had been consummated. We do not understand that the rule we have announced and the rule announced by the Court of Civil Appeals are in real conflict, but have thought it best to discuss this phase of the case in order to clarify the apparent conflict.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals affirmed.