AKERS v. MOORE. (No. 1469.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 12, 1919.)

1. BROKERS ☞86(1)—RIGHT TO COMMISSION —AUTHORITY TO SELL—SUFFICIENCY OF EVIDENCE.

In realty broker's suit for commission for selling land, evidence held to authorize finding for plaintiff.

2. BROKERS ☞57(2)—REALTY BROKER—SALE BY OWNER—RIGHT TO COMMISSION.

Realty broker, with whom farm and grass lands were listed for sale, farm lands being later withdrawn, who procured purchaser to whom owner sold all lands on terms satisfactory to himself, though different from those limited to broker, was entitled to commission on price at which land was listed.

3. APPEAL AND ERROR ☞1064(4)—HARMLESS ERROR—INACCURACIES IN CHARGE.

In realty broker's action for commission, any verbal inaccuracies in a charge held harmless to defendant owner.

Appeal from Donley County Court; J. H. O'Neal, Judge.

Suit by D. C. Moore against C. D. Akers. From judgment for plaintiff, defendant appeals. Affirmed.

A. T. Cole, of Clarendon, for appellant.
H. B. White, of Clarendon, for appellee.

HUFF, C. J. Moore, as a real estate broker, sued Akers for a commission earned by reason of services rendered in the sale of a section of land. It was alleged that the plaintiff was engaged in the real estate business, and that defendant listed with him for sale certain lands, among which was section No. 15; that 320 acres thereof was in cultivation, and the other 320 acres was pasture or grazing land; that the list price was $35 for the land in cultivation and $15 per acre for grass land, and the defendant agreed to pay plaintiff a commission of 5 per cent. in the event he procured a purchaser for said land, who might be acceptable to the defendant, that is, a purchaser who was able, willing, and ready to purchase at such price on terms acceptable to defendant; that if plaintiff procured a purchaser of said land acceptable, who was ready and willing and able to buy at such price and upon terms acceptable to defendant, there would be due the plaintiff a commission of 5 per cent.; that plaintiff was authorized to procure the assistance of other real estate men to make such sale or procure such purchaser; that plaintiff procured C. N. Shaw, who purchased the section at the price defendant had authorized the plaintiff to offer, which totaled the sum of $16,000 for the entire tract, and that defendant accepted the said Shaw as purchaser therefor; that plaintiff was the procuring cause of such sale; that he showed the purchaser the land, and interested him in the land, and brought the parties together; that thereby defendant was due for such services $800. Defendant filed a general denial. The case was submitted to the jury, who rendered a verdict in favor of the appellee, Moore, for the sum of $800, and judgment was accordingly so entered.

The appellant asserts error upon the refusal of the trial court to instruct a verdict for him as requested, and also error in the charge of the court. By a proposition it is asserted that, a specific contract of listing having been alleged, appellee could not recover upon an implied contract, and further that the court erred in overruling certain exceptions made by appellant to the charge of the court, on the ground that plaintiff alleged that the land sold Shaw was listed with him for sale by Akers on an express contract and agreement to pay commission, and, having failed to allege an implied contract the facts authorizing recovery only on quantum meruit, it was error for the court to charge the jury, if Moore was the procuring cause of the sale, etc., to find for plaintiff.

[1, 2] The evidence will authorize a finding that the appellant listed with appellee several sections of land, among which was the section sold to Shaw, and agreed to pay, upon the sale being made, 5 per cent. commission upon the price of the land. The first listing was that the north one-half of the northeast section was listed at a price of $35 per acre, and the north one-half of the northwest section at a price of $25 per acre, and the south half of the two sections, and two sections lying south of them at $15 per acre. After listing the land on that day the appellant, after returning home, phoned the appellee that he had concluded to take the farm land off the market; that appellee could sell the grass land separately. Appellee in further explanation stated that the farm lands could not be sold separately from the grass land; that appellant did not want to sell the farm land without selling the grass land. He stated, the way appellant listed the land, that he could not sell the south half without selling the entire section with it. "The way he listed the land with me was for me to sell each of the north halves separately, and the three sections of grass land together." The north half of the section sold was in cultivation and had the improvements on it, and the south half was grass land. The evidence shows that the appellee learned that Shaw had sold his place and wanted to buy. He notified Shaw that he could not buy the north half of the section without buying the south half; Shaw at that time stating that he only desired the farm land. The appellee employed a Mr. Poole to show Shaw the land, which he did the next day, and after looking at the land Poole took Shaw to Memphis to see appellant, and brought appellant and Shaw together. Poole testified that he told—

"Mr. Akers, 'I have a purchaser for the northeast half of the section.' He remarked that he would not sell half of the section, but would sell the whole section. I told him I had been over the land with Mr. Shaw, and that he and Shaw might talk it over. He remarked to me that he didn't have the land listed with any one but D. C. Moore. I remarked that I had shown the land for Mr. Moore and at Mr. Moore's request, and had brought Mr. Shaw down to see him about buying the land and to arrange terms."

It appears the trade was not consummated that day. Shaw had not fully determined whether he could arrange to take all the land, but later in the week the appellant sold the section to Shaw, the north half for $35 per acre, and the south half for $15 per acre. The appellant himself testified that the way he had the land listed with appellee he could only sell the three sections of grass land together and the half section farms separately.

The facts are sufficient to show that appellant, in listing the land with appellee, authorized him to employ other brokers to assist him in the sale of the land. From the facts we think the jury were authorized to find that appellee had the land for sale or to procure a purchaser therefor, but he could

only sell the grass land, or they might have found from the evidence that the entire section, which contained farming land, could not be sold by appellee, or they could have found according to appellant, that the agent could sell the farming land separately, or was only authorized to sell the grass land. There can be but little question that this land was listed with appellee, but upon what terms he was authorized to close the sale may be doubtful from the testimony. However, it is uncontradicted that he did procure a purchaser for the land, to whom the sale was effected by the appellant after the appellee brought them together. The sale of the quantity and the form of the tract sold may have been different from that which appellee was authorized to close the sale under his listing contract, but it is not clear that this is true, for at one place the appellee testified he was authorized to sell a section of land, provided the grass and farming land thereunder were sold together. The appellant says:

"The way I had listed my land with Moore, he could only sell three sections of grass land together and the half section farms separately."

Shaw wanted, and would have taken at once, the half section designated as farming land, but appellant demanded that he take all of the section. The only question with Shaw was whether he could arrange to take it all. It seems to us that appellee procured a purchaser under the very terms appellant says he listed the land, but appellant wanted him to take all the section, and so closed the trade for that amount. The rule in cases of this kind is clearly stated by the Supreme Court in the case of Goodwin v. Gunter, 185 S. W. 295, which we here quote:

"It is general doctrine that, in order for a broker to be entitled to commissions under a contract stipulating for their payment in the event of his sale of given property upon stated terms, a purchaser must have been produced through his efforts, ready, able, and willing to buy the property upon the contract terms; otherwise, the contract is not fulfilled upon the broker's part, and the commissions are therefore not earned. But the commissions are earned, and the broker is entitled to their payment according to the contract, if, while it is in force, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. This is but a rule of fairness and right. In such case the owner receives the full benefit of the broker's effort. Through the diligence of the broker a buyer is produced. Having interested a prospective buyer, the broker is entitled to a fair opportunity of making a sale to him upon the terms authorized. The owner, pending the broker's negotiation, may, in disregard or repudiation of his obligation to respect the broker's right to conclude the transaction, take the matter into his own hands, avail himself of the broker's effort, close a sale upon satisfactory terms, and yet deny the broker's right of compensation. It is no answer in such a case to say that a purchaser has not been produced by the broker, ready, able, and willing to buy upon the terms limited by the contract, and the owner is therefore free to deal with the buyer, though produced by the broker, without any liability to the latter. That becomes unimportant in the face of the outstanding fact that it is by the broker the buyer is produced, and before his negotiation is concluded a sale is made, as the result of his effort, which is presumably just as satisfactory to the owner. The owner will therefore be deemed in such a case to have waived the terms to which the broker was confined, and the law declares him liable for the commissions fixed by the contract, for the reason that, except as to such waived provision, the broker's part of the contract has been fully performed. The decisions of this court clearly confirm this principle. It is recognized generally elsewhere, and nothing else could well be the law. Hancock v. Stacy, 103 Tex. 219, 125 S. W. 884; McDonald v. Cabiness, 100 Tex. 615, 102 S. W. 721; Hamburger et al. v. Thomas (Civ. App.) 118 S. W. 770; Loomis v. Broaddus (Civ. App.) 134 S. W. 743; Chilton & Cole v. Butler, 1 E. D. Smith (N. Y.) 150."

This case has been followed in a number of cases since. It is now recognized that when the owner changes the terms which he has given to the agent to those satisfactory to himself and makes a sale to a purchaser procured by the efforts of the agent, the agent is entitled to recover the per cent. agreed upon originally. Pryor v. Scott, 200 S. W. 909; Ford v. Malone, 196 S. W. 347. The jury evidently applied the above rule to this case, and we think their findings not without evidence.

[3] The appellant asserts that the sixth paragraph of the court's charge was error. This paragraph is not, in our judgment, correct as framed; but when read in the light of other paragraphs of the charge, and of the evidence adduced, we believe the jury would understand therefrom, although the sale was effected upon terms which, under the listing contract, appellee could not have consummated, yet the appellant, if the purchaser was procured by appellee, would be liable for the contract price, even though the owner sold on such terms as suited him. At any rate, we think the case ought not to be reversed because of the verbal inaccuracies of the charge, if any.

The case will be affirmed.