## WAURIKA OIL ASS'N NO. I et al. v. ELLIS. (No. 1772.)

(Court of Civil Appeals of Texas. Amarillo. June 1, 1921. Rehearing Denied June 22, 1921.)

**1. Brokers ☞48—Broker who procures buyer entitled to commission.**

It is the general rule that a real estate broker having a contract authorizing him to effect a sale is entitled to the commission agreed on where he procures a buyer who consummates a purchase of the property on terms satisfactory to the owner.

**2. Brokers ☞53—Where sale is consummated, broker is deemed the procuring cause.**

Ordinarily, when it is shown that a broker is instrumental in bringing the buyer and seller together, and the sale is consummated, he is deemed the procuring cause.

**3. Brokers ☞54 — Where purchaser is acceptable, it is not necessary to show that he was ready, able, and willing to buy.**

Where the broker produces a purchaser acceptable to the owner, it is not necessary to prove that the purchaser was ready, able, and willing to buy.

**4. Brokers ☞49(2) — Where purchaser buys, it is immaterial whether contract was binding or optional.**

Where a purchaser buys, it is immaterial on the broker's right to commissions whether the contract was a binding one or whether it was optional.

**5. Brokers ☞86(4) — Evidence held to warrant finding that broker produced purchaser.**

Evidence held to warrant a finding that the broker produced a purchaser ready, able, and willing to buy, so as to be entitled to his commission.

**6. Associations ☞18 — Association estopped from denying authority of manager.**

Where three trustees of an association sold property, accepting the services of plaintiff, the association is estopped to deny the authority of the managing trustee, who contracted with

plaintiff for rendition of services in connection with the sale.

**7. Associations ⚫20(5) — Averment that association made contract held warranted.**

Where an association adopted and ratified the act of plaintiff broker in effecting a sale of its property, it was permissible to plead that the contract of sale was made by the association in analogy to pleading that a contract executed by promoters and ratified by a corporation was a corporate contract.

**8. Trial ⚫351(2)—Special issue written on same paper with others covered need not be given.**

An issue not pleaded as an affirmative defense, though raised, need not be submitted where, when requested, it was written on the same piece of paper with other issues which were substantially covered by the charge.

**9. Brokers ⚫87—Broker may recover entire commission even though another was to share.**

Though plaintiff broker agreed to pay another a proportion of his commission for his services, plaintiff may, there being no privity of contract between the third person and the defendant landowner, recover the entire commission, the two not being partners, and the third person not being a necessary party.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Action by G. R. Ellis against the Waurika Oil Association No. 1, and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Weeks, Morrow, Francis & King and Davenport & Wilson, all of Wichita Falls, for appellants.

Bonner, Bonner & Sanford, of Wichita Falls (Wm. N. Bonner and Wayland H. Sanford, both of Wichita Falls, of counsel), for appellee.

HUFF, C. J. The appellee Ellis sued the appellant, Waurika Oil Association, a joint stock company, acting under a declaration of trust, with W. R. Shankle, Y. E. Hildredth, and T. A. Edmonds as trustees, together with Alfred D. Diffie. It is alleged that Ellis was a broker, and that appellant company had listed with him nine acres of oil land in Wichita county, and that appellants stated to him they desired his services in finding and procuring a purchaser for said property at a price of $650,000, and agreed, for his services in finding a purchaser who was ready, able, and willing to purchase the property, that it would pay him 5 per cent. on the entire sale price, which would amount and did amount to the sum of $32,500; that in that territory it was the custom, and in this case it was agreed, that the broker should find a purchaser ready, willing, and able to purchase, and to leave to the parties making the contract the matters of arranging the details and exact terms of closing the deal, but in this case appellants authorized appellee to state they were willing to sell partly for cash and partly for a certain amount of the oil to be thereafter produced from the lease, which had thereon at that time several valuable producing oil wells; that by his efforts he brought appellants in touch with purchasers, the Caldwell Oil Company and the Swanson Company, both oil companies, who were acting together, and that he assisted in arranging the details of the purchase and that they entered into a contract of sale at the price of $650,000, and that the contract of purchase has since been executed, and that thereby he had earned the commissions agreed upon, amounting to $32,500.

Before entering upon the trial of the case, the appellee dismissed Diffie from the petition by and with the consent of all parties and the court. The appellants answered only by general exception, one special exception, and general denial. The trial court submitted three special issues to a jury, which they answered, and the effect of which is that the Waurika Oil Association, by and through W. R. Shankle, placed what is known as Waurika No. 1, composed of nine acres of land, with Ellis for sale; that the company, through W. R. Shankle, agreed to pay Ellis commission of 5 per cent. to find a purchaser who was ready, able, and willing to purchase said property on terms satisfactory to the company, and that he did find a purchaser or purchasers who were ready, able, and willing to purchase said property on terms satisfactory to said company. We may state the evidence, we think, supports the finding of the jury.

It is shown, on or about August 13 or 15, 1919, W. R. Shankle, the president and one of the directors of the Waurika Oil Association, listed the nine-acre lease with Ellis at $650,000, agreeing to pay him 5 per cent. commission. The terms then explained what would be required would be part cash, several reasonable payments, and the balance out of the production of oil. It seems the association had previously had the lease on the market at $750,000, but had been unable to effect a sale at that price, and Ellis had tried to obtain purchasers at that price by getting certain data, for the purpose of submitting it to the producers. After the listing, the appellee associated with him E. F. Sparrow, and through the joint efforts of the two they secured the Caldwell Oil Company and the Swanson Company, who, on the 20th day of August, 1919, entered into a written contract with the Waurika Oil Association, signed by W. R. Shankle, who the evidence shows was president and director in the association. The contract provided the Waurika Oil Association agreed to assign and transfer the oil and gas lease to the nine acres of land, describing it, in consideration of $50,000 cash,

which was to be deposited in the bank in escrow, to be paid over to the association upon approval of the abstract of title, and of the instrument of conveyance, including assignment of the oil and gas lease and bill of sale to all personal property. An additional $50,000 to be paid in cash on or before 20 days from date and $100,000 30 days from date, and the remainder, $400,000 in oil, as follows: The grantee should produce and place as much of the production as is possible from the wells now on the lease, and from such other wells as may be drilled thereafter, in the pipe lines, or market the same, executing division orders to the pipe line or purchasers for two-thirds of the oil sold or placed in the pipe lines in favor of the Waurika Oil Association, which was to be credited by it upon the $400,000 until fully paid. The grantees were to receive one-third from the date of their accepting the title. Abstracts were to be furnished, examined, and, if approved, the $50,000 deposited in the bank in escrow was to be paid to the association. If any delay in the completion of the assignment, or in obtaining authority to execute the necessary instruments, and such delay should be beyond the date for the payment of the future installments of cash, such sums shall await the end of such delay and be paid thereafter, together with cash placed in escrow.

"It is further understood and agreed that T. A. Edmonds, one of the trustees of said association, shall confirm this agreement of sale, and should he fail or refuse to immediately so do, the grantees shall have the right to withdraw this agreement and the cash from the escrow keeper, and the same shall be at an end."

On the 1st day of November, 1919, the Waurika Oil Association, through its then trustees, W. R. Shankle, J. Harrison White, and G. H. Colvin, conveyed by proper assignment, duly attested and acknowledged, the nine acres described in the former contract to the Caldwell Oil Company and the All American Oil & Gas Company. The recited consideration was $200,000 cash, and an agreement to pay seven-sixteenths of the production until the payment amounted to the total additional sum of $400,000. The instruments in evidence, as well as the parol testimony, show T. A. Edmonds, Y. E. Hildredth, and W. R. Shankle, were the trustees of the association at the time of entering into the contract, and that when the assignment was made J. Harrison White and G. H. Colvin were then the present elected, duly qualified, and acting trustees authorized to execute the assignment. The record further shows that, about September 11, 1919, the Swanson Company sold its interest in the contract executed on the 20th day of August to the Caldwell Oil Company, and that on the same day the Caldwell Company transferred a half interest in the contract to the All American Oil & Gas Company, together with the deposit in the bank of the sum of $50,000. The evidence further shows this deposit was used as part of the cash payment paid upon the execution of the assignment November 1st. The evidence shows the Swanson Company and the Caldwell Company were ready, willing, and able to take the land at the price and upon the terms agreed upon. Shankle, two or three times in his testimony, states Edmonds did not agree to or approve the contract made on the 20th of August but at one place he testified that he (Shankle) signed one, "and that a little later, as soon as Mr. Edmonds could be reached, he signed it." There is also evidence that Edmonds approved the contract by telegram, and also that Hildredth did so over the phone. This is perhaps a sufficient outline of the case, but it may be necessary to refer to other evidence in disposing of the assignments. The testimony is sharply conflicting at several points.

[1-5] The first assignment is to the effect that the jury's finding that Ellis found purchasers ready, willing, and able to buy on terms satisfactory to appellant is against the great preponderance of the evidence, and that there is no sufficient legal and competent evidence to support the finding that the contract which Ellis procured was ever consummated, etc. It is asserted as a proposition that the only contract procured was with the Swanson and Caldwell Companies, which contract, upon its face, was conditional, and that appellee is not, therefore, entitled to recover; and by a second proposition the fact that, subsequent to the execution of the contract, other trustees performed the contract as between one of the parties thereto and an alleged assignee of the other party thereto. This gave appellee no right upon his suit, for the reason the suit is not upon a quantum meruit, but upon a contract, based upon the fact alone that he had procured the contract.

The general rule is a real estate broker, having a contract authorizing him to effect a sale, is entitled to the commission agreed upon when he procures a buyer who consummates the purchase of the property on terms satisfactory to the owner, and, ordinarily, when it is shown that the agent is instrumental in bringing the buyer and seller together, the fact that the agent was the procuring cause of the sale afterwards consummated is sufficiently established. Graves v. Bains, 78 Tex. 92, 14 S. W. 256; Conkling v. Krakauer, 70 Tex. 735, 11 S. W. 117; Hancock v. Stacy, 103 Tex. 219, 125 S. W. 884; McDonald v. Cabiness, 100 Tex. 615, 102 S. W. 721. It seems in this case the agent furnished purchasers acceptable to the owner of the land, and such being the case, it was not necessary to prove the purchasers were ready, willing, and able to buy. This rule does not apply where the owner accepts the purchasers. Albritton v. Bank, 38 Tex. Civ. App.

614, 86 S. W. 646; Kolp v. Brazer, 161 S. W. 899 (7). The evidence authorized the trial court to find that Edmonds and Hildredth approved the contract shortly after it was executed. It is true that the witness Shankle says in one or two places they did not, or that they refused to approve it, but he as clearly states in other places they signed and approved the contract. The condition that Edmonds should approve the contract was for the benefit of the purchasers. This they could waive, and, if he did not approve the contract, it is clear from the evidence the purchasers nevertheless accepted the contract and consummated the same by thereafter accepting a transfer of the lease, and thereupon paid the cash required, and obligated themselves to pay the remainder of the purchase price out of the production from the well. Our Supreme Court has held the fact that the purchaser was willing and able to buy, and would have bought, or, as in this case, did buy, notwithstanding he was at liberty not to do so, must be regarded as controlling, and as dispensing with the necessity of a binding contract in writing to purchase. Hamburger v. Thomas, 103 Tex. 280, 126 S. W. 561; Slade v. Crum, 193 S. W. 723; Vrablec v. Kocurek, 199 S. W. 876; Williams v. Atkinson, 214 S. W. 504; Black v. Wilson, 187 S. W. 493; Henderson v. Gilbert, 171 S. W. 304 (4 and 5); McFarland v. Lillard, 2 Ind. App. 160, 28 N. E. 229, 50 Am. St. Rep. 234.

The appellee, through his efforts, discovered parties willing to purchase the lease. The appellant sold the land to them. It is therefore immaterial whether appellee obtained parties whom appellant only gave an option or a contract upon condition. They became purchasers through his efforts, and appellant executed a transfer to the purchasers so obtained, and when he did so all other questions were eliminated. The transfers were acceptable to the appellant. Where the terms are changed, if the sale is made as a result of the broker's efforts which is presumably just and satisfactory to the owner—

"The owner will therefore be deemed, in such a case, to have waived the terms to which the broker was confined, and the law declares him liable for the commissions fixed by the contract, for the reason that, except as to such waived provision, the broker's part of the contract has been fully performed." Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848; Webb v. Harding (Tex. Com. App.) 211 S. W. 927.

Under the findings of the jury and the facts of this case, we think the trial court properly rendered judgment for the amount of the commissions contracted, 5 per cent. of the total sales price. It is now recognized, especially since Goodwin v. Gunter, supra, where the owner changes, and sells on terms different from the enlistment contract to the agent to those satisfactory to himself, to a purchaser procured by the agent, that recovery may be had by the broker for the per cent. agreed upon. Hodde v. Malone, etc., 196 S. W. 347 (9); Pryor v. Scott, 200 S. W. 909 (4); Akers v. Moore, 209 S. W. 241.

[6] The appellant presents a third proposition under the first assignment, to the effect that appellant was a joint-stock association, conducted by three trustees, and that the contract of employment was by only one, Shankle, and having failed to prove his authority to act without the consent of the other trustee, and having failed to allege and prove ratification, appellee failed to make out a case. As heretofore suggested, there is evidence showing the then trustees did approve the sales contract. Shankle, it is shown by the evidence, was president and acting manager of the company. The evidence also shows he employed the appellee to find purchasers. The company entered into a contract with the purchasers so procured, and finally executed a transfer substantially in accordance with the contract. It would seem that, when it is shown the president of the company employed the agent, and performed the services the benefit of which the company appropriated, the burden should be on it to show the president exceeded his authority, or had no such powers. In this case it is shown prima facie that the three trustees could contract to sell and could transfer the property of the company; that all three of the trustees indorsed the contract and that the other two thereafter chosen with Shankle executed the transfer to the land. Certainly Shankle, the president, knew who procured the sale, as he made the contract of employment. The authorized trustees must, therefore, have accepted the benefits of appellee's services with knowledge of the contract. The petition alleges Ellis' employment by the company; that he brought it in touch with the purchasers; and that the contract to purchase was thereafter consummated by the company. The powers of the trustees are not shown to be joint, or that one could not act alone, without the approval of the other. However, ordinarily, we think, this would be true with reference to executing a trust, but under the facts of this case and under the pleadings we think the appellant will be estopped from asserting Shankle could not list the land for sale. The rule declared in the case of Weathersby v. Lumber Co., 107 Tex. 474, 180 S. W. 735, we think will apply in this case. This rule was substantially announced by this court in Bank & Trust Co. v. Cooper, 179 S. W. 541; Canadian Long Distance Tel. Co. v. Seiber, 159 S. W. 897.

[7] With reference to pleading adoption or ratification, we believe the rule as to pleading adoption by a corporation of the acts of its promoters, which seems to have

been applied by some authorities, may be resorted to in this case.

"Where, after the adoption or ratification by the corporation of a contract executed by its promoters with the other party to such contract thereon, it would seem that the contract is properly pleaded as having been made by the corporation (note citing McArthur v. Time Printing Co., 51 N. W. 216), so, also, an allegation that a contract was made with the corporation is sustained by proof that it was made with the promoters and adopted or ratified by the corporation."

Note cites Scadden Flat Gold Mining Co. v. Scadden, 53 Pac. 440; 1 Fletcher Enc. Corporations, § 152, p. 318.

In this case there can be but little doubt but the evidence shows the company accepted the purchasers and the contract, and received the benefit of the appellee's services with knowledge thereof. In fact, the record shows that the company was sued before the final transfer was executed for specific performance of the contract, and with knowledge of this the company executed the transfer and consummated the deal. In addition the evidence shows the company accepted the $50,000 placed in the bank on the contract as part of the cash payment upon the transfer. The facts show that the Swanson Company sold its interest to the Caldwell Company, both in the contract and the money on deposit, by a duly executed assignment, and that the Caldwell Company on the same day sold a one-half interest in the contract to the All American Oil & Gas Company. These parties, it is clearly shown, were entitled to the benefit of the contract originally made, and were accepted by the appellant as satisfying the original contract, of which appellee was the procuring cause. It would appear that it would make no difference to whom the conveyance is made if it sufficiently appears the agent was the procuring cause. Black v. Wilson, 187 S. W. 493 (12); Coffman v. Dyas Realty Co., 176 Mo. App. 692, 159 S. W. 842. The jury answered the company through Shankle, placed the land in appellee's hands for sale, and through him agreed to pay appellee the commission. This was in effect finding the company authorized Shankle to employ an agent, and that his act in so doing was adopted. We believe the evidence sufficient to support the finding, and we think that the pleading, in alleging the company employed appellee to find a purchaser, and that it conveyed to the purchaser so produced, was sufficient to admit the act of the company evidencing an adoption and authority to employ an agent.

[8] The second assignment is based on the refusal of the specially requested issue, which asks the jury to find if Ellis was acting for Alfred Diffie in seeking a purchaser for the lease in the capacity of a subagent. The appellee insists that the assignment shows no error, because appellant requested this issue, together with three or four others, on the same piece of paper, which was substantially covered by the court's charge; that he could not give this issue as requested without giving others already covered, and he was not bound to pick out this particular one and give it, but that appellant should have presented it separately. This appears to be the rule, especially where the issue requested is not pleaded as an affirmative defense. In this case Diffie was dismissed from the suit, and was no longer a party to it. The appellant did not plead that Diffie was its agent, and that customers procured by Ellis were his customers through Ellis as his subagent, but answered only by general denial. In the state of the pleadings and record, we rather think the issues sought, if answered, would have been only evidentiary. The ultimate fact sought was whether appellee was employed by appellant as agent to procure purchasers. This the jury answered in favor of Ellis. The evidence, we think, raised the issue requested, but under the pleadings it did not become an affirmative issue, and necessarily the finding of the jury is a finding against the issue requested. In the condition of the record we find no reversible error in refusing the issue as requested.

[9] The fourth assignment presents as fundamental error the rendition of the judgment in favor of Ellis for the entire commission, for that the evidence shows that one Sparrow was to have one-half of the commission in assisting Ellis in the transaction. According to Ellis' testimony, he was employed as the agent, and was to receive the entire commission; that he secured or employed Sparrow to assist him in the matter, and was to pay him one-half for such service. There was no privity of contract between Sparrow and the appellant. There appears to be considerable controversy between the parties Ellis and Diffie as to whether Diffie was agent to receive the commission, etc. It would seem at one time Diffie stated to Sparrow Ellis was to receive all of the commissions, but at another he was claiming one-third; in fact, it is impossible to reconcile the testimony of these claimants. As Sparrow and Ellis were not partners, and there being no privity of contract between Sparrow and appellant, he was not a necessary party, and Ellis, under the contract of employment, would be entitled to recover the entire commission. Brady v. Richey, 202 S. W. 170 (10); Pittman v. Boatenhamer, 210 S. W. 976 (5 and 6); Hancock v. Stacy, 116 S. W. 177, 180 (6).

We have concluded there is no reversible error assigned, and that the judgment should be affirmed.