**HASKELL et al. v. MERRILL.** (No. 1956.)

(Court of Civil Appeals of Texas. Amarillo. May 10, 1922. Rehearing Denied June 14, 1922.)

1. **Brokers ⬥82(1) — Allegations as to purchaser's agreement to pay part of broker's commission held sufficient to support judgment for broker.**

In a broker's action for commissions for the sale of oil property, allegations that defendant, the purchaser, agreed to pay plaintiff a part of his commission out of 3⅓ per cent. of the first oil run, in consideration of defendant being allowed 33⅓ per cent. of the oil until the purchase price was paid, instead of 30 per cent., as stipulated in the contract, *held* sufficient to support a judgment for plaintiff, the suit being based, not on the written contract, but on defendant's verbal agreement.

2. **Frauds, statute of ⬥103(2)—Option may be exercised verbally.**

While an option to purchase land must be in writing, the exercise of the option may be made verbally.

3. **Frauds, statute of ⬥73—Verbal agreement by purchaser of oil property to pay broker in part from first oil run held not void under statute as sale of interest in land.**

A verbal agreement by a purchaser of oil property to pay the broker who negotiated the sale a portion of his commission from 3⅓ per cent. of the first oil run, in lieu of the same amount in cash, which he agreed to pay the seller in addition to the cash payment required by the original written contract, in consideration of the proportion of the oil allowed him, until the purchase price was paid, being increased from 30 to 33⅓ per cent. *held* not void under the statute as a sale of an interest in land; the broker not being a party to the contract except as to a contingent interest in the purchase money.

4. **Brokers ⬥82(4)—In action by broker for commission under verbal agreement, proof of provision of sale contract held not at variance with allegations of petition.**

In a broker's action against the purchaser of oil property for a part of his commission, which it was alleged defendant promised to pay in consideration of his being allowed a greater proportion of oil until final payment of the purchase price than that stipulated in his written contract with the seller, proof that such contract, which was not attached to the petition, provided that defendant should pay an additional cash sum on the purchase price in consideration of such increase, *held* not at variance

with plaintiff's allegations, the latter's right of action being based, not on the original contract, but on defendant's agreement to pay part of the commission.

**5. Brokers ⚏82(4)—Variance between provisions of sale contract and allegations in petition in action on verbal agreement with broker for his commission held immaterial.**

In a broker's action for commissions, a variance between a provision in a contract for the purchase of oil property that the purchaser should pay an additional cash sum on the price in consideration of his being allowed a greater proportion of the oil until final payment, and allegations of the petition that the purchaser agreed to pay such amount to plaintiff in part payment of his commission *held* immaterial, even if the suit were based on the written contract, or whether the verbal agreement was made before or after the contract was reduced to writing.

**6. Brokers ⚏86(1)—Evidence held sufficient to sustain finding that purchaser agreed to pay part of broker's commission after date of written contract of sale.**

In a broker's *action against* the purchaser of oil property for part of his commission, which he alleged defendant agreed to pay, evidence *held* to sustain a finding that such verbal assumption of the sellers' obligation was made after the date of the written contract of sale, which contained no such provision as to commissions.

**7. Frauds, statute of ⚏33(2) — Purchaser's promise to pay part of broker's commission held supported by sufficient consideration.**

A promise by a purchaser of oil property to pay the broker who negotiated the sale a part of his commission in consideration of a greater proportion of the oil until final payment is supported by a sufficient consideration, and hence *is not within the* statute.

**8. Evidence ⚏178(6)—Secondary evidence of contents of telegram held admissible.**

Secondary evidence of the contents of a telegram to defendant, the original of which was destroyed, and the copy of which in another state defendant was given the opportunity to produce when his depositions were taken, is admissible.

**9. Evidence ⚏121(2)—In action on purchaser's agreement to pay part of broker's commission, plaintiff's testimony as to conversation in defendant's absence held admissible as res gestæ.**

In a broker's action against a purchaser of oil property for a part of his commission, which he alleged defendant agreed to pay from 3⅓ per cent. of the first oil run, plaintiff's testimony as to a conversation with an agent of defendant, in the latter's absence, with reference to his willingness to accept payment from 3⅓ per cent. of the oil and a statement that he had released the seller to such extent was admissible as part of the res gestæ, such conversation having special reference to the very matter on which the suit was based.

**10. Witnesses ⚏268(1)—Evidence on cross-examination that agent, through whom defendant claimed settlement with plaintiff was made, was defendant's henchman, held admissible.**

In a broker's action against the purchaser of oil property for commissions which he alleged defendant agreed to pay, testimony that one whose authority to act for him in settling with defendant he denied, and who, he contended, was injected into the transaction without his knowledge or consent for the purpose of defeating his cause of action by claiming a settlement, had known defendant for 20 years, had helped, as a member of the Legislature of Oklahoma, to promote the deal which moved the capitol from Guthrie to Oklahoma City while defendant was Governor, had made several sales of royalties to interests promoted by defendant, and had been connected with him in other business ventures, *held* admissible on cross-examination of a witness for defendant.

**11. Brokers ⚏81—Evidence held to show that others who assisted in negotiations were subagents, and hence not necessary parties to action for commissions.**

In a broker's *action for* commissions, evidence *held* to show that others who assisted in negotiating the sale were plaintiff's subagents, and hence not necessary parties.

**12. Appeal and error ⚏731(5)—Assignments of error that jury's findings are contrary to preponderance of evidence and not supported by evidence held too general.**

Assignments of error that the jury's findings are against the great preponderance of the evidence and without evidence to support them, when considered with propositions based thereon that such findings be set aside, on such grounds, are too general to require consideration.

Appeal from District Court, Wichita County; Jos. H. Aynesworth, Special Judge.

Action by F. A. Merrill against C. N. Haskell and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Fitzgerald & Hatchitt, of Wichita Falls, for appellants.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellee.

HALL, J. The appellee, Merrill, a broker, sued the appellants, C. N. Haskell and the Seventy-Seven Oil Company, an Oklahoma corporation, to recover commissions alleged to be due him. The substance of his original petition is: That he was a broker, engaged in selling and exchanging real estate and oil and gas leases for commissions. That J. I. Staley of Wichita Falls, listed with him certain oil property in Wichita county, Tex., described and set out in the petition, agreeing on the 15th day of September, 1919, to pay him a commission of $175,000. That the

plaintiff immediately undertook to sell the property and interested the said Haskell in the purchase of the same, who, on or about the 10th day of October, 1919, entered into a written contract with J. I. Staley, P. P. Langford, and J. A. Staley, for the purchase of the property so listed; that on the 25th day of October the said Haskell assigned his said contract with Langford and the Staleys to the Seventy-Seven Oil Company. He further declares as follows:

"(5) That under the contract between the said C. N. Haskell and J. I. Staley, P. P., Langford and J. A. Staley, the defendant C. N. Haskell obligated himself to pay for the said properties the sum of $3,000,000, $500,000 of which was to be paid in cash, and of the remainder $1,000,000 was to be paid out of the oil based on the daily production, and the balance of $1,500,000 was payable out of the oil, but without any stipulation as to the amount of such oil to be run daily, nor as to when the payments were to be made, and of the oil so run the said C. N. Haskell was to receive 30 per cent. and the said J. I. Staley, P. P. Langford, and J. A. Staley 70 per cent. until the property was paid out. In the course of the transaction, however, it developed that the said C. N. Haskell insisted upon a division of the oil in paying for said property in the following proportions: I. e., to the said J. I. Staley, P. P. Langford, and J. A. Staley, 66⅔ per cent. and to the said C. N. Haskell 33⅓ per cent.. and in composing the difference between them and to consummate the negotiations between the said J. I. Staley, P. P. Langford, and J. A. Staley and the said C. N. Haskell, it was agreed that the percentages last above indicated should prevail, provided the said C. N. Haskell would pay to the said J. I. Staley, P. P. Langford, and J. A. Staley $55,000 more in cash than had been theretofore contemplated, and the said C. N. Haskell, the defendant herein, agreed that he would assume and pay the plaintiff $55,000 of the commission for the sale of said premises, which said sum it was agreed by the said C. N. Haskell was to be paid to plaintiff out of 3⅓ per cent. of the first oil run from said premises. Said 3⅓ per cent. being the difference between the 33⅓ per cent. of the oil runs which said Haskell insisted on having and the 30 per cent. which the said J. I. Staley, P. P. Langford, and J. A. Staley contended for, and but for which assumption on the part of C. N. Haskell to pay to plaintiff the commission the said Staley, Langford and Staley would not have made the change in this contract from 70 per cent. to 66⅔ per cent.

"(6) That the said C. N. Haskell has on numerous occasions, to wit, about October 13, 1919, agreed to pay to plaintiff the said sum of $55,000, being a portion of the commission aforesaid, and which assumption on the part of the said C. N. Haskell constituted a part of the consideration for the said C. N. Haskell obtaining one-third of the oil rather than 30 per cent. thereof, which the said J. I. Staley, P. P. Langford, and J. A. Staley contended for."

It is further alleged that the said Haskell, on or about the 24th day of October, 1919, assigned all of his right, title, and interest in the contract and lease to said Seventy-Seven Oil Company, with the understanding and agreement that the appellee was to be paid the sum of $55,000 out of 3⅓ per cent. of the first oil run from said lease. He alleges a breach of the contract, and prays for specific performance; that he have a judgment for the value of 3⅓ per cent. of all oil runs since the purchaser took charge of the property, and that there be vested in him 3⅓ per cent. of all oil runs from said property until the value thereof should amount to $55,000, or in lieu thereof that we have a judgment for $55,000 against the defendants, and in the alternative that he have judgment for the value of 3⅓ per cent. of all oil which had been run from the property, and which was alleged to be of the value of $30,000, and that he have a lien on 3⅓ per cent. of the balance of said oil until the total consideration of $55,000 had been paid. The appellants answered by general and special exceptions, general denial, and specially alleged that they never at any time had any contractual relations whatever with the appellee, Merrill; that he was not authorized to represent them in any capacity in the purchase of the property, and did not represent them; that they never agreed to pay him any sum of money at any time; that neither of the appellants knew Merrill, and never agreed to pay him any commission. They further specially answered that they purchased the property from Langford and J. A. Staley; that said purchase was evidenced by a written contract; that all the agreements and undertakings between the appellant Haskell and the said Staley and Langford were merged into the written contract, and in which it was not agreed to pay any commission; that the said Haskell never assumed to pay any commissions which Staley or Langford might have owed, but that he did agree with I. N. Putnam and his associates to pay them $55,000 out of the last oil runs from said property after the purchase price therefor had been paid.

The case was submitted to a jury, who found: (1) That Haskell agreed to pay Merrill $55,000 out of the proceeds of 3⅓ per cent. of the first oil run from the property in question; (2) that the Seventy-Seven Oil Company agreed to pay Merrill $55,000 out of the 3⅓ per cent. of the first oil run from said property; (3) that Haskell agreed to assign to Merrill 3⅓ per cent. of all oil runs until the latter was paid $55,000; (4) that the Seventy-Seven Oil Company made the same agreement with Merrill; (5) that the reasonable value of 3⅓ per cent. of the property mentioned in the contract and assignment was on or about the 25th day of October, 1919, $100,000; (6) that Haskell's contract to pay the $55,000 commissions was not optional; (7) that there was no verbal or written option; (8) that

the agreement to pay the $55,000 commissions was not in writing; (9) that the oil runs were not changed so as to give Haskell 33⅓ per cent. of same on his agreement to pay Putnam and his associates $55,000 commissions in future oil runs. There was a judgment in favor of Merrill for the amount which Haskell owed him for oil already received under the contract, and decreeing the payment to him of the balance out of future production.

[1, 2] The first contention by the appellant is that the pleadings do not support the judgment. It is insisted that the suit is based upon a written contract. We cannot assent to this proposition. It seems that the parties have entered into several writings, evidencing the terms and extent of their negotiations, the principal contract being dated October 2, 1919. We think it is clear from the fifth and sixth paragraphs of the petitions which we quote above, and which is made clearer by other paragraphs not necessary to be set out, that the appellee sought to recover against Haskell and the Seventy-Seven Oil Company upon the verbal assumption to pay $55,000 of his total commissions. The contract evidenced by the several writings provides that Merrill's commission shall be $175,000, $100,000 of this amount to be paid out of the first $500,000 of the purchase money. The contract provides that after $1,500,000 of the total consideration has been paid there shall be delivered to the credit of the parties of the first part, in tanks or pipe lines connected with the premises, 66⅔ per cent. of such production, which they shall receive at the said posted price until the balance of said consideration has been paid. By a prior term of the contract the production was to be divided between the parties so as to give Langford et al. 70 per cent., and Haskell 30 per cent., but the contract further provides that Haskell may, at any time, by paying $55,000 in cash on the consideration mentioned, increase his proportion of the oil from 30 per cent. to 33⅓ per cent., and reduce the 70 per cent. to the parties of the first part to 66⅔ per cent. It appears that he exercised his option and received 33⅓ per cent. The appellant contends that this part of the contract is void under the statute of frauds as to the 3⅓ per cent. additional. It seems to be the rule that while an option to purchase land must be in writing, the exercise of the option may be made verbally. 27 Corpus Juris, 216, § 196.

[3-5] Appellant further contends that the provision for 3⅓ per cent. is void under the statute of frauds because it is a sale of an interest in land. We do not so construe the contract. Merrill acquired no interest in the land. He did not sign and was not a party to the contract except as to a contingent interest in the purchase money. If it be admitted that the oil is a part of the realty,

the contract nowhere provides that he is to receive any part of it. His compensation is to be paid from the proceeds of the sale of the oil. It is held in Parriss et al. v. Jewell et ux., 57 Tex. Civ. App. 199, 122 S. W. 399, that a contract to deliver certain amount of the proceeds of the sale of land does not come within the statute of frauds. Since the appellee's right of action was not based upon the original contract, but upon Haskell's assumption of Staley's obligation to pay $55,000 of the commission due appellee, the issue of variance is without merit. The original contract was not attached to the petition. Furthermore, the variance in the description of the contract pointed out by appellant would not be material if the suit had been based upon the writing.

[6, 7] It is not clear from the record whether Haskell's assumption to pay the $55,000 of appellee's commissions was made before or after the contract was first reduced to writing on October 2d, and the further writing of October 7th, but we think this becomes immaterial. If it is necessary to fix the date of the assumption by Haskell, there is evidence enough in the record to sustain a finding that it was subsequent to the date of the writings. Fred Weeks testified that he had no recollection of any change being made in the contract, at the time it was written, on account of the commission, but that the change was made by telegram after he returned to Wichita Falls from New York. The contract gives Haskell the option. If he had exercised it prior to the time the contract was reduced to writing, it would not have been necessary to insert that term in the writing. Haskell received the 3⅓ per cent. additional of the oil produced upon the express condition that he should assume and pay Merrill the $55,000 sued for. His promise to do so is supported by a sufficient consideration and is therefore not within the statute of frauds. Bain v. Lovejoy (Tex. Com. App.) 234 S. W. 1096.

[8] The appellant contends that the court erred in permitting evidence as to the contents of a telegram sent to Haskell with reference to the matter in suit, insisting that the written telegram was the best evidence of its contents. This objection was with reference to the telegram which Weeks sent Haskell about the 15th of October, to the effect that Merrill had agreed to accept $55,000 out of 3⅓ per cent. of the oil as it was produced from the premises, as part of his commission. Bills of exception were taken, and were qualified by the court by the statement that the copy of the telegram retained by the Western Union Telegraph Company at Wichita Falls was not kept longer than six months, and had therefore been destroyed at the time of the trial on December 28, 1920. Haskell was not present when this case was tried. When the matter of the telegram

came up his attorney, Armstrong, wired him at New York City, and received a reply from Haskell which purported to give a copy of the telegram sent him on October 16th by Weeks. It further appears that on the 8th day of September, 1920, some three months prior to the trial, Haskell's depositions were taken, and he was requested to attach to his answers all of the telegrams relating to the matter, and that he failed to do so. It having been shown that the original telegram deposited with the Western Union Company at Wichita Falls had been destroyed; that the copy delivered to Haskell in New York was beyond the jurisdiction of the court; that he had been given an opportunity to produce it when his depositions were taken— secondary evidence of the contents of the telegram was clearly admissible. T. G. & N. R. R. Co. v. Berlin (Tex. Civ. App.) 165 S. W. 62.

[9] Contention is made under the seventh proposition that the court erred in permitting Merrill to testify to conversations he had with Weeks with reference to his willingness to accept payment of $55,000 of the commissions due him from 3⅓ per cent. of the oil to be delivered to Haskell and his statement to Weeks that he had released Staley to the extent of $55,000. This conversation has special reference to the very matter upon which this suit is based, and is therefore part of the res gestæ, and is clearly admissible, although what was said during the conversation was in the absence of Haskell. Mitchell v. Crossett (Tex. Civ. App.) 143 S. W. 965; Naylor v. Parker (Tex. Civ. App.) 139 S. W. 93; Brooks v. Long (Tex. Civ. App.) 190 S. W. 510.

[10] Complaint is made by the eighth proposition of the action of the court in permitting a rather extended cross-examination of the witness I. M. Putnam, by appellee's counsel. The purpose of the cross-examination evidently was to ascertain what relation he bore to C. N. Haskell. Appellee was permitted to show by Putnam that the latter had known Haskell for 20 years; first in Oklahoma, while Haskell was building railroads; that the witness was helping to build Oklahoma City; was a member of the Legislature, and helped to promote the deal which moved the capitol from Guthrie to Oklahoma City while Haskell was Governor; that he had made several sales of royalties to interests promoted by Haskell, and had been incidentally connected with him in several other business ventures. Appellant does not show that this testimony was prejudicial, and we think it would have been a limitation of the right of cross-examination if the court had sustained the objections. It is not made clear by the record how Putnam became interested in the commission. The contention of appellee was that he was Haskell's henchman, and was injected into the trans-

action by Haskell without the knowledge or consent of Merrill, and that Haskell was using him, claiming a settlement with him to defeat Merrill's action. From the findings of the jury it may be inferred that they shared that view. Merrill denied the authority of Putnam to act for him in making a settlement with Haskell and this testimony was pertinent to that contention.

[11] In his motion for judgment the appellant requested the court to abate the suit upon two grounds: (1) Because under the uncontradicted facts the debt sued for belonged to Putnam, Hammond, Crotty, Winston, West, and Merrill, all of whom were jointly interested in the claim and were necessary parties to the suit; (2) because under the plaintiff's own testimony he was not entitled to recover the $55,000 sued for, since other parties were jointly interested with him in the claim, and he could not recover alone. The record does not sustain this contention, and the court did not err in overruling the motion upon the grounds stated. Staley who was the owner and controller of the property, testified that he listed it with Merrill and agreed to pay Merrill the commissions; that he did not agree to pay Putnam or any one else any part of the $55,000 commissions at any time; that he told every one concerned that he owed the commissions to Merrill, and told Haskell that Merrill was his only agent; he further testified that Merrill was the only man he ever intended to pay any part of the commissions to, and that he never at any time had any other agent save and except Merrill. Merrill testified as follows:

"The commission was coming to me; all of it was paid through me; all of it was to be paid through me; that was my understanding; I had the property exclusively for sale, and Staley told all of them that were associated that he would not recognize anybody else."

The effect of this testimony is to show that Putnam, Crotty, Hammond, and others were simply subagents. The case comes within the rule announced by Huff, C. J., in Waurika Oil Association v. Ellis (Tex. Civ. App.) 232 S. W. 364, holding that subagents are not necessary parties to an action of this kind.

[12] The tenth and eleventh propositions are that the court should set aside the findings of the jury because they are contrary to the great preponderance of the evidence and are not supported by the evidence. These propositions are manifestly too general to require a consideration. They are based upon the eighteenth to twenty-fifth assignments of error. The eighteenth assignment, which in form fairly represents all of them, is as follows:

"The finding of the jury to special issue No. 1 is against the great preponderance of the testimony in said cause, and is without any evidence to support it."

The remaining assignments attack the findings consecutively, and are too general, when considered with the propositions, to require this court to consider them. We have considered them, however, and both contentions are disposed of with the statement that every finding of the jury is amply supported by competent testimony.

We find no reversible error in the record, and the judgment is affirmed.