Opinion delivered May 15, 1888.

---

No. 6225.

## THOMAS A. CONKLING v. ADOLPH KRAKAUER.

1. BROKER—PRINCIPAL AND AGENT.—A broker is entitled to compensation when he procures a purchaser with whom his principal is satisfied and who actually contracts for the property at a price satisfactory to the owner. See opinion for facts illustrating this rule.

2. SAME.—When the principal relies on the validity of his title which he represents and claims to be good, the right of the agent who negotiates a valid sale of the property under his power at the price demanded, to compensation, is not affected by any subsequent disagreement between his principal and the purchaser regarding the question of title—and this though such disagreement may result in a cancelation of the contract.

APPEAL from El Paso. Tried below before the Hon. T. A. Falvey.

*W. B. Brack* and *C. Q. Stanton,* for appellant: A broker employed to sell is entitled to recover his compensation where a purchaser procured through his agency is able, willing and ready to complete the purchase on the terms agreed on, although through the default of the seller, or his inability to fulfill the the terms on his part or make a good title, no sale is finally consummated. (Burns v. Hill, 2 Texas Ct. App., 523; Hamtin v. Schulte, Minn., 27 N. W. Rep., 301; Stillman v. Mitchell, 2 Rob., 537; Holly v. Gosling, 3 E. D. Smith, 264; Id., 150; Doty v. Miller, 43 Barb., 529; Bailey v. Chapman, 41 Mo., 36; Phelan v. Gardner, 43 Cal., 306; Kock v. Emmerling, 22 How., N. S.)

*James P. Hague* and *W. M. Caldwell,* for appellee: An agent employed to sell is not entitled to recover his compensation unless a purchaser procured through his agency is able, willing and ready to complete the purchase at the price named and on the terms specified by the principal. (Burns v. Hill, 2 Texas Ct. App., Civil Cases, 523; Tombs v. Alexander, 101 Mass., 255.)

The agreement of Krakauer in the executory contract, in connection with the face value agreed to be paid, bound him to make a good title, unless the vendees waived their right to have a good title, and this waiver might be made by entering into the contract with notice of defects in the vendor's title. (Taul v. Bradford, 20 Texas, 264; Hurt v. McReynolds, 20 Texas, 599; Hilliard on Vendors, 256, 2 ed.; Id., 260, note, 2 ed.; Ogilvie v. Foljambe, 3 Merivale, 52; Waterman on Specific Performance.)

There was evidence sufficient to justify the jury in finding that the agreement between Conklin and Krakauer was that Conklin should find a purchaser who would take the lots with such title as Krakauer had—that is, a title based on a deed from Mrs. Gillock and a judgment against Lizzie Arnold. (Taul v. Bradford, 20 Texas, 264; Hurt v. McReynolds, 20 Texas, 599; Hilliard on Vendors, 260, 2 ed., and note; Tombs v. Alexander, 101 Mass., 255; Ogilvie v. Foljambe, 3 Merivale, 52.)

STAYTON, CHIEF JUSTICE. The appellee employed the appellant, as a real estate broker, to sell certain lots which he claimed in the city of El Paso. The appellant succeeded in finding purchasers who were fully able to pay for the property, and with them the following written agreement was made:

December 11, 1882, received of J. H. Hampson and W. F. Moore the sum of five hundred dollars, respectively two hundred and fifty dollars, on account of purchase of lots seventy two and seventy-three, block thirteen, as shown on Anson Mills's map of El Paso, Texas, one hundred and twenty feet on San Antonio street and one hundred and seventy-three four-twelfths feet on Oregon street, the purchase money being twelve thousand dollars, six thousand dollars cash, six thousand dollars on or before six months after date, without interest. J. H. Hampson's note. The balance of cash payment to be made on the delivery of the deed to said lots executed by A. Krakauer.

[Signed]         J. H. CONKLIN,<br>Agent for A. Krakauer.

Approved A. Krakauer, J. H. Hampson, W. E. Moore.

Payment of the five hundred dollars, recited in this instrument, was made to Conklin, and he used one hundred and fifty-five dollars of this money under the directions of Krakauer and for his benefit. This action was brought to recover three hundred and forty-five dollars of this money remaining in the hands of Conklin, and by way of reconvention he set up a claim for commissions for making a sale of the property. Krakauer tendered to Hampson and Moore a warranty deed to the lots, and they refused to accept it and pay the balance of the purchase money on the ground that the title of Krakauer was defective.

In a suit between them the agreement, before set out, was canceled, on the ground that Krakauer was not able to make good title. It was claimed by Krakauer, in the court below, that he was not liable to Conklin for commissions unless he had obtained a purchaser for the lots who was willing to take them and pay the stipulated price for such title as Krakauer had.

He alleged such an agreement. As to the facts on which the implied agreement to pay commissions arose Krakauer testified that he "met Conklin and told him that he had bought the lots from Elizabeth Gillock and had obtained a judgment for them against Lizzie Arnold, and that he was satisfied that his title was perfect and that he was then ready to sell them; that he had not offered them before, but that he wanted Conklin to sell them for him; that Conklin was a real estate dealer and said

he knew all about the Lizzie Arnold matter; that he had tried all over the country to find such a party and never could hear of any such; that he had written letters and advertised for and did not believe there was any such person."

After this Conklin having found Hampson and Moore, who desired to purchase the lots, they and Krakauer met at Conklin's office, when Krakauer "told them that he was satisfied his title was good, and that he then handed the judgment against Lizzie Arnold to Conklin to show to the purchasers," whereupon the purchasers "wanted to know about Lizzie Arnold, and Conklin said he had made inquiries for Lizzie Arnold and could not find any such party." He further stated that before the agreement to sell was made, he knew that the purchasers desired to build a hotel on the lots to cost one hundred and fifty thousand dollars, and he told them he would not fear to invest that sum on the lots, and that he had no doubt as to the validity of his title.

After stating that he tendered to the purchasers a warranty deed, and that the lots were of the value of the sum agreed to be paid, and that he would not have taken less, he again stated that "he told Conklin that he wanted him to sell the lots, and had stated all he said to Conklin about the title. That he did tell him that his title was good and thought it perfectly good, but that nothing was said about compensation or the terms thereof further than he had stated."

The above is substantially all the evidence introduced by the appellee bearing on the agreement or terms on which Conklin was to make a sale of the property.

Conklin testified that Krakauer told him that his title was good, and that he believed this to be true. He further stated that there was no agreement that his right to compensation should be contingent on his finding a purchaser who would take the property with such title as Krakauer had. This was substantially all the evidence bearing on Conklin's right to compensation. There was a verdict and judgment in favor of appellee.

The court submitted to the jury the question whether there was an agreement between the parties that Conklin should procure a purchaser for the property who would take it with such title as Krakauer had; and the giving of this charge, and the refusal of the court to set aside the verdict because contrary to the evidence, is assigned as error.

The evidence shows beyond question that a legal and binding contract to sell the lots was made, and that this was brought about through the agency of Conklin, and it forbids the conclusion that he did less than entitles him to compensation. A broker is entitled to compensation when he procures a purchaser with whom his principal is satisfied, and who actually contracts for the property at a price satisfactory to the owner. (Cooke v. Fisk, 12 Gray, 493; Keys v. Johnson, 68 Pa. State, 43; McGavock v. Woodlief, 20 How., 226; Coleman v. Meade, 13 Bush., 358; Jones v. Adler, 34 Md., 440; Lincoln v. McClatchie, 36 Conn., 136; Stuart v. Mather, 32 Wis., 344; Rice v. Mayo, 107 Mass., 550.)

The written agreement to sell, signed by Krakauer, and his tender to the purchasers of a deed with general warranty, preclude any pretense that he intended to sell less than a perfect title, or that he expected Conklin to find a purchaser that would be willing to take a title such as his may actually have been. The evidence does not tend to show any agreement between them that Conklin's right to compensation should depend on his finding a purchaser who would pay the price fixed and take such title as Krakauer had. The latter asserted his title to be good, declared that his attorneys had so advised him, and there is nothing even to show that Conklin undertook to pass upon the question of title. He was employed to sell; he sold, and there is no fact shown by the record under which his right to compensation for his services can be denied.

The court, in view of evidence, should not have given the paragraph of the charge complained of, and should have granted a new trial, and for these reasons the judgment will have to be reversed.

Whether Conklin is entitled to the sum claimed by him, or to some other sum, the reasonable value of his services, need not, as the case is presented, be considered.

For the errors noticed the judgment will be reversed and the cause remanded.

*Reversed and remanded.*