GRIFFITH v. BRADFORD.

(Court of Civil Appeals of Texas. Ft. Worth. May 13, 1911.)

1. BROKERS (§ 48*)—COMPENSATION—RIGHT TO COMPENSATION.

When a real estate broker procures a purchaser to enter into a written contract satisfactory to the owner, and that contract is capable of specific enforcement, the broker has then effected a sale entitling him to his compensation.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 65; Dec. Dig. § 48.*]

2. VENDOR AND PURCHASER (§ 137*)—TITLE—APPROVAL BY ATTORNEY.

Where a contract for the sale of land provided for a deposit by the purchaser which should be returned to him if his attorney did not approve of the title, and also provided that the vendor should furnish an abstract showing a good and merchantable title, the attorney could not reject the title upon mere fanciful objections.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 260; Dec. Dig. § 137.*]

3. SPECIFIC PERFORMANCE (§ 32*)—CONTRACTS—MUTUALITY.

A contract for the sale of real estate, which provided that for a certain consideration the vendor agreed to sell the land to the purchaser, and that the purchaser should make a deposit which should be returned to him if his attorney disapproved the title, an agreement on the part of the purchaser to buy and pay the consideration was implied, and the contract was capable of specific performance as against the purchaser, and this implication was not prevented by a clause in the contract that the purchaser should forfeit a certain deposit on his failure to perform, where there was no stipulation that the vendor would accept such forfeit as liquidated damages.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 89-99; Dec. Dig. § 32.*]

4. SPECIFIC PERFORMANCE (§ 32*)—CONTRACTS—MUTUALITY.

Where a contract for the sale of land provided that the vendor and the agent effecting the sale should guarantee to the purchaser a certain amount of rent for a certain period of time, and the agent failed to sign the contract, the contract cannot be specifically enforced against the purchaser for lack of mutuality.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 89-99; Dec. Dig. § 32.*]

5. FRAUDS, STATUTE OF (§ 44*)—GUARANTY.

Where a broker, to effect a sale, verbally agreed with the purchaser to join the vendor in a guaranty that the property would bring a certain rental for 15 months, such agreement would not bind the broker until reduced to writing and signed, under Sayles' Civ. St. art. 2543, subd. 5, relating to contracts not to be performed within a year.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 66, 92; Dec. Dig. § 44.*]

6. BROKERS (§ 64*)—COMMISSIONS—FAILURE TO PROCURE VALID CONTRACT.

Where a purchaser of real estate secured by a broker refused to consummate the sale on the ground that the title was not valid, and the broker failed to procure a contract in writing which could be specifically enforced, the broker cannot recover of his principal, in the absence of a showing that his principal's title was in fact defective.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 97; Dec. Dig. § 64.*]

Appeal from District Court, Nolan County; Jas. L. Shepherd, Judge.

Action by J. L. Griffith against J. A. J. Bradford. From a judgment for defendant, plaintiff appeals. Affirmed.

---

Woodruff & Woodruff and Theodore Mack, for appellant. Beall & Beall and H. C. Hughes, for appellee.

DUNKLIN, J. J. L. Griffith sued J. A. J. Bradford to recover $750 claimed as a commission earned by the plaintiff in procuring a purchaser ready, willing, and able to buy certain real estate owned by the defendant in the town of Sweetwater. In his petition plaintiff alleged that he was employed by the defendant to find a purchaser for the property at a price of $15,000, and that defendant contracted and agreed with him to pay a commission of 5 per cent. on the price to be realized as compensation for his services. He further alleged that he did procure a purchaser in L. Woodhouse, who was ready, willing, and able to purchase the property at the price fixed, and that the usual and customary compensation for the services rendered by him was 5 per cent. of the selling price of the land, and that defendant had become liable to pay the plaintiff such compensation. The trial court gave to the jury a peremptory instruction to return a verdict in favor of the defendant, and, from a judgment rendered in conformity with a verdict returned in obedience to that instruction, plaintiff has appealed.

Plaintiff testified that he procured Woodhouse to enter into the following written contract with Bradford for a sale to Woodhouse of the property in controversy: "The State of Texas, County of Nolan. This memorandum of agreement made and entered into this 18th day of September, 1909, by and between J. A. J. Bradford of Nolan county, Texas, hereinafter known as party of the first part, and L. Woodhouse of Parker county, Texas, hereinafter known as party of the second part, witnesseth: That for and in consideration of the sum of fifteen thousand dollars ($15,000.00) cash the party of the first part agrees to sell to the party of the second part the following described property situated in Nolan county, Texas, and known and described as 35 feet off of lots 1, 2, 3 all in block 20, in the original town of Sweetwater, Nolan county, Texas. It is further agreed and understood that the party of the first part shall furnish an abstract of title to said property showing a good and merchantable title and the said party of the second part shall have a reasonable time to have same examined and approved by his attorney. In consideration of the premises the said party of the second part deposits with the First National Bank the sum of $5,000.00 which said deposit shall be returned to him if for any reason or cause said attorney does not approve said title. The said party of the first part further agrees that, joined by J. L. Griffith, to guarantee to the party of the second part the sum of $75.00 per month rent for a period of fifteen months from the first day of October, 1909. J. A. J. Brad-138 S.W.—68

ford, Party of the First Part. L. Woodhouse, Party of the Second Part." The proof shows that $5,000 was deposited by Woodhouse in accordance with the terms of the contract. However, Woodhouse declined to take the property, and testified that the reason for his refusal to do so was that his attorney employed by him to examine the title to the property had rejected the title, and the $5,000 deposited in the bank by Woodhouse was then withdrawn by him and negotiations for the consummation of the trade terminated. The testimony of the defendant tended to show that plaintiff did not procure Woodhouse to enter into the contract.

[1] It is well settled that, when a real estate broker employed by the owner to sell property procures a purchaser to enter into a written contract satisfactory to the owner to purchase the property which is capable of specific enforcement, then the broker has effected a sale within the meaning of the terms of his employment, and his commission has been earned. Conkling v. Krakauer, 70 Tex. 735, 11 S. W. 117.

[2] Appellee insists that the contract did not bind Woodhouse to take the property, and that therefore the contract was not capable of specific enforcement for lack of mutuality; and in support of this contention appellee lays special stress upon the clause in the contract providing that the $5,000 deposited in bank by Woodhouse "shall be returned to him if for any reason or cause said attorney does not approve said title." It will be noted that in a previous paragraph of the contract it was agreed that Bradford should furnish an abstract showing a good and merchantable title to the property vested in him, and the language quoted must be construed as meaning that the attorney employed by Woodhouse to examine the title would make no objections thereto that were not reasonable and substantial, and that Woodhouse would not have the right to reject the title upon mere captious or fanciful objections by his attorney. Redwine v. Hudman (Sup.) 133 S. W. 426.

[3] While the contract does not in express terms bind Woodhouse to buy the property and to pay the consideration stated, yet his agreement to do so is clearly implied. It stipulates that Woodhouse should have a reasonable time within which to have the title to the property examined by his attorney, and as a consideration for Bradford's agreement to convey the property the contract recites that Woodhouse had deposited in bank $5,000, and that the same should be returned to him if his attorney should fail to approve the title; thereby clearly implying that, in the event the title should be pronounced good, the money deposited should be turned over to Bradford. And Woodhouse and Bradford both signed the contract. The following statement found in 9 Cyc. 333,

seems to be sustained by the authorities: "To show mutuality the obligation may be implied as well as express, although on its face and by its express terms the contract is obligatory on one party only; yet, if the intention of the parties and the consideration upon which the obligation is assumed is that there shall be a correlative obligation on the other side, the law will imply it." Furthermore, the testimony of the witnesses shows without controversy that it was the intention of both Bradford and Woodhouse that the latter should be bound to purchase the property upon the terms stated ·if the title should be found to be merchantable, and that Bradford's agreement to sell was based upon the supposed obligation of Woodhouse to buy.

Even though the contract should be construed as showing an agreement on the part of Woodhouse that the $5,000 deposited by him should be forfeited to Bradford as liquidated damages in the event Woodhouse should fail to consummate the trade, yet there is no stipulation in the contract showing that Bradford agreed to accept said sum as liquidated damages, and therefore the decision of our Supreme Court in the case of Moss & Raley v. Wren, 102 Tex. 567, 120 S. W. 847, cited by appellant in support of his contention, is not applicable.

[4] However, we are of the opinion that plaintiff failed to show such a contract on the part of Woodhouse to purchase the property as could be specifically enforced by Bradford for the following reason: The last sentence in the contract reads: "The said party of the first part further agrees that. joined by J. L. Griffith, to guarantee to the party of the second part the sum of seventy-five dollars per month rent for a period of fifteen months from the first day of October, 1909." In the absence of such guaranty of rents by Griffith, the contract was. not binding upon Woodhouse. The contract was dated September 18, 1909. Bradford testified that Griffith agreed with him to join with Bradford in a guaranty to Woodhouse of the rents in accordance with the stipulation quoted. The testimony of Griffith seems to indicate that he did agree with Bradford to join in a guaranty to Woodhouse of the rents, but only for 12 months, instead of 15 months, as provided in the contract. But there is no testimony in the record that Griffith ever at any time entered into any agreement with Woodhouse, either in parol or in writing, to guarantee the rents for any period of time. The testimony further shows that the contract was drawn by Griffith's wife and its terms dictated by Griffith and were therefore known to him, but he failed to sign it.

[5] If Griffith had agreed with Woodhouse to guarantee the rents for a period of 15 months beginning October 1, 1909, it would have been necessary to reduce the agreement to writing; otherwise it would have been unenforceable against Griffith by reason of the statute of frauds. Sayles' Civil Statutes, art. 2543, subd. 5.

One of the terms of the contract being that Griffith should guarantee to Woodhouse the rents, the contract could not be specifically enforced against Woodhouse, in the absence of such a guaranty by Griffith, and that, too, in a legally binding form.

[6] Plaintiff offered no proof to show that Bradford's title to the property was defective; he relied solely upon the fact that his attorney had rejected the title.

In the case of Brackenridge v. Claridge, 91 Tex. 527, 44 S. W. 819, 43 L. R. A. 593, our Supreme Court said: "There is a line of cases which hold that where the broker has made, or has caused to be made, a binding contract with the purchaser, and the latter refuses to perform the agreement by reason of some supposed flaw in the title, the agent is entitled to his commission without showing that the title is bad. Parker v. Walker, 86 Tenn. 566, 8 S. W. 391, and authorities there cited. But these cases proceed upon the principle that, when the broker has procured a binding contract, he has performed his obligation, for, if the title is good, the principal may enforce the contract of sale; if bad, the failure to consummate the transaction is attributable to his own fault. But when no written contract of sale has been procured, and the proposed purchaser declines·to take the property on account of some supposed infirmity in the title, it is incumbent upon the broker, in order to recover, to show by competent evidence that the defect actually exists." The rule thus announced is just and equitable and has been approved in a number of cases. See Hamburger & Dreyling v. Thomas, 118 S. W. 770, and authorities there cited.

As Griffith failed to show a contract on the part of Woodhouse for the purchase of the property which could be specifically enforced against Woodhouse, and as he failed to show that Bradford's title was defective, and as the evidence conclusively shows that Wood-. house declined to purchase the property on account of a supposed defect in the title, there was no error in the peremptory instruction to the jury to return a verdict in favor of the defendant, and the judgment is, accordingly, affirmed.