## RABINOWITZ v. NORTH TEXAS REALTY CO. (No. 6792.)*

(Court of Civil Appeals of Texas. Austin. Feb. 12, 1925. Rehearing Denied March 25, 1925.)

1. **Specific performance ⊚⇒58—Clause in exchange contract providing for named sum as liquidated damages for breach by either party held not to render contract unenforceable.**

Clause in contract for exchange of lands for named sum as liquidated damages in case either party breached terms of contract *held* not to detract from obligation to convey by respective parties, nor to permit either party to convey his land or at his option to pay sum named, and hence contract was enforceable.

2. **Vendor and purchaser ⊚⇒129(1)—Plaintiffs' title held sufficient to comply with requirement of land contract to convey "good title."**

Where grantor in addition to limitation title held and occupied land through and under perfect chain thereto from state down to him, his title was sufficient to comply with land contract requiring good title.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Title.]

3. **Vendor and purchaser ⊚⇒132—Method of perfecting limitation title into record title stated.**

Title by limitation can be perfected into record title by proper releases or deeds from all adverse claimants, or by suit and final adjudication between all claimants in court of competent jurisdiction.

4. **Vendor and purchaser ⊚⇒130(5)—Right of parties cited by publication to attack judgment under statute held not valid objection to title.**

In suit to quiet title, right of defendants cited by publication to attack judgment therein under Rev. St. art. 2026, within two years after its rendition, was not valid objection to title offered under contract to convey good title.

5. **Brokers ⊚⇒63(1)—Defendant held at fault in refusing to carry out contract to exchange lands.**

In action by broker to recover commissions, where contract between defendant and another to exchange lands was valid, binding, and enforceable obligation, and title offered other party to transaction complied with contract requirement to furnish good title, defendant *held* at fault in refusing to carry out contract.

6. **Brokers ⊚⇒52—Broker procuring purchaser whom owner accepted was entitled to commission.**

Broker having procured purchaser whom owner of land accepted, and with whom he entered into binding contract to exchange lands, was entitled to his commission.

7. **Brokers ⊚⇒63(2)—Broker entitled to commission where failure to consummate contract was due to owner's fault.**

Where broker procured purchaser with whom owner entered into binding contract to exchange lands, since failure to consummate deal was due to fault of owner, it was immaterial that his written promise to pay commission stipulated that it was not to be paid until deal was consummated.

Appeal from Denton County Court; E. I. Key, Judge.

Action by the North Texas Realty Company against D. Rabinowitz. Judgment for plaintiff, and defendant appeals. Affirmed.

Emil Corenbleth, of Dallas, and Owsley & Owsley, of Denton, for appellant.

Sullivan, Speer & Minor, of Denton, for appellee.

BAUGH, J. The North Texas Realty Company, a partnership composed of J. H. Barton and W. R. Sullivan, of Denton, Tex., sued D. Rabinowitz to recover $375, claimed as commissions due for services rendered as brokers in a transaction involving the exchange of real estate between said Rabinowitz and Joe Darnall. Darnall owned about 226 acres of land in Denton county, and Rabinowitz an improved lot in Ranger, Tex. The Realty Company brought them together; they agreed upon the terms of exchange of their properties, and entered into a written contract embodying those terms. Contemporaneously with the execution of said contract, D. Rabinowitz executed and delivered to plaintiff the following:

"State of Texas, County of Denton:

"This is to certify that the undersigned D. Rabinowitz, of Dallas, Dallas county, Texas, is to pay the North Texas Realty Company the sum of three hundred seventy-five ($375.00) dollars as commission for services rendered in the exchange of certain property at Ranger described in a certain contract between one Joe Darnall and the said Rabinowitz as 125–127 South Austin street, said commission due and payable at Denton, Texas, when deal is finally consummated.

"Witness my hand this the 12th day of April, A. D. 1921.    "[Signed]  D. Rabinowitz."

Rabinowitz defended in said suit on the grounds, amongst others, that his contract with Darnall was unenforceable; that Darnall had failed to make good title to his lands; that said commission was not due and payable until the deal was finally consummated; and that, since it was never consummated, he did not owe plaintiff anything.

The case was tried to the court without a jury and judgment rendered against Rabinowitz for $375. From this judgment, he has appealed.

## Opinion.

[1] The first contention made by appellant is that his contract with Darnall was unenforceable. This contract provided for the conveyance by each to the other of their respective tracts of land, and that appellant in addition to conveying his lot in the town of Ranger, Tex., was to pay Darnall $1,500 in cash and assume an indebtedness of $9,266.50 against Darnall's 226 acres of land in Denton county. It also provided that each was to furnish the other an abstract, certified to date, showing good title; that each was to have 30 days in which to have his abstract examined and, in case any objections were raised by either, same should "be met and cured by them as speedily as possible." Section VI of said contract further provided as follows:

"As evidence of good faith, each party hereto contracts and agrees to become bound to the other party in the sum of twenty-five hundred ($2,500) dollars hereby agreed upon in advance as liquidated damages in case either party shall breach the terms of this contract. That is, if first party shall fail and refuse to carry out this contract hereby made, he shall become liable to the party of the second part for the sum of twenty-five hundred ($2,500) dollars as liquidated damages for his failure to so comply with his said contract, provided, of course, that second party has in all respects complied with the terms of this agreement, and second party shall become liable to first party in a like sum should he make default in carrying out the provisions of this agreement, provided, of course, that first party had complied with the terms hereof, but in case both parties shall carry out the terms hereof, then this provision shall become null and void; otherwise, to remain in full force and effect."

It is this section which appellant insists makes the contract unenforceable, citing Smith v. Felder (Tex. Civ. App.) 208 S. W. 409; Moss v. Wren, 102 Tex. 569, 113 S. W. 739, 120 S. W. 847; Clark v. Asbury (Tex. Civ. App.) 134 S. W. 288; and Redwine v. Hudman, 104 Tex. 23, 133 S. W. 426. Contracts of this character, containing options, forfeiture provisions, or providing for liquidated damages, in various terms, have been before the courts repeatedly. The contract itself must be looked to in each instance. Judge Williams of the Supreme Court, in Redwine v. Hudman, 104 Tex. 21, 133 S. W. 426, states with approval the controlling principle in such cases as follows:

"The principle which controls is well settled. It is thus stated: 'The question always is, What is the contract? Is it that one certain act shall be done, with a sum annexed, whether by way of penalty or damages, to secure the performance of this very act? Or is it that one of two things shall be done at the election of the party who has to perform the contract, namely, the performance of the act or the payment of the sum of money? If the former, the fact of the penal or other like sum being annexed will not prevent the court enforcing the performance of the very act, and thus carrying into execution the intention of the parties. If the latter, the contract is satisfied by the payment of a sum of money, and there is no ground for proceeding against the party having the election, to compel the performance of the other alternative.' Fry on Specific Performance, § 115. See, also, 36 Cyc. 571, 572.

"Whether a contract belongs to one class or the other depends on the intention deduced from a proper construction of the instrument in which the parties have expressed their agreement."

We have not set out in full the contract between Rabinowitz and Darnall. It clearly appears, however, that it was the manifest intention of the parties to exchange their properties. The matter of possession, taxes, rents, and interest are all specifically determined in the contract. Nor do we think

(270 S.W.)

the liquidated damage clause above set out in any wise detracts from the principal obligation—that is, the conveyance by the respective parties of their lands—or that it permits either party to convey his land, or at his option to pay the $2,500. The case of La Prelle v. Brown (Tex. Civ. App.) 220 S. W. 151, presented this question in a contract very similar to that under consideration here. In that case the line of cases cited by appellant was reviewed and such contract held to be enforceable. The language there used is well applicable to the instant case. This court, there speaking through Judge Jenkins, used the following language:

"The test as to whether the contract could have been specifically enforced is: Was it a contract to do a specific thing (buy the land), with a penalty annexed by way of damages to aid in securing its performance; or was it a contract to do one of two things (buy the land or pay a forfeit), at the option of the purchaser? The answer to this question must be found in the language used in the contract, read in the light of the circumstances surrounding the parties at the time of making the same. Looking to the language used, we find that the first sentence denominates it a 'contract of bargain and sale.' Of what—of the land, or of an option to buy the land? The contract states that the seller has 'bargained and sold,' and obligates himself to 'convey' the land therein described, and that the purchaser has bought the same at the price and upon the terms therein stated. It further declares that, 'as an evidence of good faith and in earnest of this contract, the second party (the purchaser) has this day deposited with J. C. Fountain, of Falls county, Tex., the sum of $2,000.'

" 'Good faith' in what? In his intention to comply with 'this contract.' What contract? To pay for the land as therein stipulated. If he had the option to either purchase the land or to forfeit the $2,000, there could have been no lack of good faith in the matter; for whichever he did would have been in compliance with his contract."

In that case the general rule as laid down in the original opinion of Judge Gaines in Moss v. Wren, 102 Tex. 569, 113 S. W. 739, 120 S. W. 847, and in 9 C. J. 631, is discussed and numerous authorities cited to sustain it. Our conclusion is therefore that said section VI of the contract between Rabinowitz and Darnall did not render said contract unenforceable.

[2] Appellant next contends that the proof showed that said contract was unenforceable, in that Darnall's title was not "good"; his contention being that it was a limitation title, and that the decree of the district court of Denton county removing cloud therefrom was rendered on March 10, 1921, only 30 days before said contract was made, and that under article 2026, Revised Statutes, said decree could have been attacked at any time within two years after its rendition.

[3, 4] The rule seems well settled that a contract for a "good title" to land is not complied with by showing a title by limitation. Wakeland v. Robertson (Tex. Civ. App.) 219 S. W. 842, and cases there cited; also, Cline v. Booty (Tex. Civ. App.) 175 S. W. 1081. In those cases, however, a limitation title seems to have been the only title the vendor had. That is not true in the instant case. The record shows in the case before us that the suit to remove cloud was brought primarily to correct inaccurate descriptions in field notes, calls, etc., and to establish instruments which had been burned or lost in the destruction of the courthouse of Denton county by fire back in 1875. After hearing the testimony and examining the evidence, which is briefly set out in the record, the trial court in that suit expressly found that M. M. Shaw, who was Darnall's grantor, in addition to having a limitation title to said lands, held and occupied same through and under a perfect chain of title thereto from the state of Texas down to him, consisting of muniments of title duly registered, and all executed and delivered for valuable considerations, and so stated in his decree. This, we think, was sufficient to make Darnall's title a "good" record title. As stated in Nicholson v. Lieber (Tex. Civ. App.) 153 S. W. 645, even if Darnall had only a limitation title originally—

"A title by limitation can be perfected into a record title by either one of two methods: By proper releases or deeds from all adverse claimants, or by suit and final adjudication between all claimants in a court of competent jurisdiction."

Nor do we think, as urged by appellant, that the right of the defendants cited by publication to attack said judgment under article 2026, Revised Statutes, within two years after its rendition, was a valid objection. Of course, that was a possibility, but so remote as to be negligible. A bare possibility that a title otherwise regular may become defective is not a valid objection to same. Duncan v. Glore, 189 Ky. 132, 224 S. W. 678; 3 Elliot on Contracts, § 2332.

[5, 6] We are therefore of the opinion that the contract between appellant and Darnall was a valid, binding, and enforceable obligation; that the trial court properly so found; and that appellant was at fault in his refusal to carry out same. Having procured a purchaser whom appellant accepted, and with whom he entered into a binding contract, the broker was entitled to his commission. Conkling v. Krakauer, 70 Tex. 735, 11 S. W. 117; Moss v. Wren, 102 Tex. 569, 113 S. W. 739, 120 S. W. 847; Griffith v. Bradford (Tex. Civ. App.) 138 S. W. 1072; Seidel v Walker (Tex. Civ. App.) 173 S. W. 1170; Freeman v. Wooten (Tex. Civ. App.)

234 S. W. 415; Frances v. Foster, 113 Tex. 521, 260 S. W. 1023.

[7] And, since failure to consummate the deal was due, as found by the trial court in his findings of fact, to the fault of appellant, it was immaterial that his written promise to pay said commission stipulated that same was not to be paid until the deal was finally consummated. Heath v. Huffhines (Tex. Civ. App.) 152 S. W. 176.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.