## CLOSNER v. GANNAWAY et ux.
### No. 8490.

Court of Civil Appeals of Texas. San Antonio. Nov. 12, 1930.

Charles W. Bell, of Houston, and Cecil A. Edwards, of Rio Grande, for appellant.

Montgomery, Hall & Taylor, of Edinburg, and E. A. McDaniel, of McAllen, for appellees.

FLY, C. J.

A general demurrer was sustained to a petition filed by appellant in which he sought to recover commissions for obtaining a lessee for certain property. The allegations show that the lessee was the Edinburg Amusement Company, which it appears had not been actively organized or chartered. The allegations

of the petition must, when assailed by a general demurrer, be taken as true. The petition alleges the employment of appellant by appellees to procure a lessee for certain lots, Nos. 7, 8, and 9, in Edinburg, Tex., and a certain building to be erected thereon by appellees. Appellant obtained as lessee the Edinburg Amusement Company, which was accepted by appellees and a contract to lease entered into by and between the appellees and the company, by its trustee, whereby appellees agreed to erect and lease to the company a certain building, on said lots, to cost not more than $55,000, nor less than $45,000; the consideration being 10 per cent. per annum of the cost of building, for the first ten years, and another sum for the following ten years. A breach of this contract was alleged to have been made by appellees.

After the execution of the contract with the amusement company, appellees entered into a written contract with appellant, as follows:

"The State of Texas, County of Hidalgo:

"Whereas, J. J. Closner has acted as agent for Julia S. Gannaway and L. A. Gannaway in procuring the lease with Edinburg Amusement Company on lots (7) seven, (8) eight, and (9) nine, in Block Number Two Hundred Ninety-eight (298) of the town of Edinburg, Hidalgo County, Texas, a copy of an agreement for the execution of said lease being attached hereto and made a part hereof.

"And Whereas, the said Julia S. Gannaway and L. A. Gannaway have agreed to pay J. J. Closner a commission for procuring said lease,

"Now, Therefore, we, the said Julia S. Gannaway and L. A. Gannaway agree and obligate ourselves to pay to the said J. J. Closner for procuring said lease the sum of five per cent (5%) of the rentals to be received by us for the first two years of said lease, Four per cent (4%) of the rentals to be received by us for the next three years, and Three per cent (3) of the rentals to be received by us for the last five years, said commission to be due and payable at the time of the execution of the lease between the said Julia S. Gannaway and L. A. Gannaway and the Edinburg Amusement Company.

"We further agree to pay a like amount of commission to the said J. J. Closner should lessee exercise its option at the end of the tenth year to renew said lease for an additional ten (10) years,

"[Signed]   Julia S. Gannaway
          "L. A. Gannaway (pro forma)"

By the terms of that contract appellees bound themselves to pay appellant 5 per cent. of the amount of rent contracted to be paid by the company.

Appellees, through their general demurrer, seek to avoid payment to appellant on the ground that the amusement company had no legal existence, was unable to enter into a legal contract, and the allegations that a lessee was obtained who was not ready, willing, and able to lease the property.

■ The allegations show that appellees entered into a contract with the company with full knowledge of all the facts shown by the petition, and that they knew the inability of the company to contract when they made the contract, and that such supposed lack of legal existence now insisted upon was stated in the several contracts, as well as in the bond executed by the company to appellees. Nothing was concealed or hidden from them, but every fact disclosed, and, with full knowledge of all the facts, they accepted the amusement company as their lessee and proceeded to bind themselves to pay appellant the compensation for his services now sought to be recovered by him.

When they, with full knowledge of the ability or inability of the company to contract, accepted it as a lessee, and with this knowledge and acceptance agreed to pay appellant his commission, they were estopped to set up such inability to contract. The law on this subject is clearly stated by Judge Stayton in Conkling v. Krakauer, 70 Tex. 735, 11 S. W. 117, 118, and that rule has been followed in this state since that opinion was rendered. The Supreme Court held: "A broker is entitled to compensation when he procures a purchaser with whom his principal is satisfied, and who actually contracts for the property at a price satisfactory to the owner."

Following the case cited in the case of Watkins Land Mortgage Co. v. Thetford (43 Tex. Civ. App.) 536, 96 S. W. 72, the court said: "Appellant's third, fourth, and seventeenth assignments of error are based upon the proposition that the purchaser procured by the appellee was not able, pecuniarily, to comply with his contract for the purchase of the land, or to respond in damages for a failure so to do, and, for that reason, appellee was not entitled to commissions for procuring such purchaser. Under a different state of case, this proposition might be correct, but the pleadings and uncontroverted testimony in this case show that the purchaser was satisfactory to appellant, and that it contracted with the purchaser for the sale of the property at a price satisfactory to it; hence the question as to whether the purchaser was able to carry out the contract is not involved in this case. Conkling v. Krakauer, 70 Tex. 735, 11 S. W. 117."

Again, in the case of Leuschner v. Patrick (Tex. Civ. App.) 103 S. W. 664, 665, the court held: "If, after Hunter was produced by the plaintiff as a prospective purchaser, Leuschner, the owner of the land, was satisfied with him and entered into terms and an agreement to sell him the land within a certain time, and the circumstances were such as to indicate that Leuschner was as well aware of Hunter's

financial condition as was the plaintiff, Leuschner would be in no attitude to complain that the purchaser produced by the plaintiff was not able to buy."

To the same effect is Roderick v. Elliott (Tex. Civ. App.) 17 S.W.(2d) 102, and other Texas cases.

We conclude that the petition was not subject to attack through a general demurrer, and the judgment is reversed, and the cause remanded.