J. E. STITT and Henry S. Miller
Co., Appellants,

v.

ROYAL PARK FASHIONS, INC. and
Sears, Roebuck and Company,
Appellees.

No. 19100.

Court of Civil Appeals of Texas,
Dallas.

Feb. 4, 1977.

Rehearing Denied March 3, 1977.

David A. Coggin, Gerry N. Wren, Brice & Barron, Dallas, for appellants.

Michael W. Stucker, G. Frank Brown, Dallas, for appellees.

ROBERTSON, Justice.

Appellants, J. E. Stitt and Henry S. Miller Company, appeal from an order granting appellees', Royal Park Fashions, Inc., and Sears, Roebuck & Company, motion for summary judgment and denying appellants' motion for summary judgment. Appellants seek real estate commissions as provided in a sublease agreement entered into by appellants, appellees, and Trinity Company, the owner of the leased premises. They appeal on the ground that the trial court erred as a matter of law in denying their motion for summary judgment because the phrase "as collected from tenant" in the sublease merely shows time of payment and is not a condition precedent to payment. Also, they argue alternatively that the language in the lease is ambiguous, and consequently a question of fact precludes the trial court's granting a motion for summary judgment for either party. We agree with appellants' contention that the sublease provides a time of payment rather than a condition precedent, and accordingly we reverse the judgment and remand the cause with instructions.

In 1963, Sears leased the subject premises from Trinity Company for a term of twenty-five years. Ten years later, on behalf of Royal Park, Stitt negotiated a sublease of the premises from Sears to Royal Park for a term of eight years. A printed form of lease contract with certain changes was used as the final contract between the parties. The sublease was signed on April 18, 1973, by Sears as sublessor, Royal Park as sublessee, Stitt as principal broker, and Henry S. Miller Company as cooperating broker. The relevant portions of the sublease are as follows:

1. Tenant (Royal Park) agrees to pay to J. E. Stitt and Company, 1214 Stemmons Tower South, Dallas, Texas 75207 for the account of the landlord rent for said premises at the rate of Eight thousand one hundred seventy-four and twenty-five one hundredths ($8,174.25) dollars per month in advance.

26. REALTOR'S COMMISSION: Landlord (Sears) agrees to pay to undersigned, principal realtor, a commission for negotiating this lease agreement of six percent (6%) of the total monthly rental *as collected from tenant.* (Emphasis added)

In April of 1974, Royal Park negotiated with Trinity, the owner, to purchase the premises. On May 13, 1974, Royal Park and Sears entered into a "surrender of leasehold" agreement, terminating Royal Park's obligations and liabilities under the sublease. Also, Royal Park executed a "hold harmless indemnity agreement" by which it assumed any liabilities of Sears to third parties with respect to the sublease. In the same month, Royal Park purchased the premises from Trinity and, consequently, discontinued payment of the regular monthly rentals under the sublease to Stitt.

Stitt and Miller brought this suit against Sears for the commission on the unpaid rent, as provided in the sublease, and against Royal Park on its indemnity agreement. Royal Park and Sears take the position that the phrase "as collected from tenant" is a condition precedent to any liability for commissions because it identifies the source of payment to be the monthly rentals, and that since Royal Park is no longer obligated to make future monthly rental payments, Stitt is not entitled to receive the balance of his commissions for negotiating the sublease. Stitt argues that this language is not a condition, but merely a statement showing time of payment.

In order to determine whether a condition precedent exists, we must ascertain the intention of the parties as expressed in the entire instrument. *Republic National Bank v. National Bankers Life Ins. Co.,* 427 S.W.2d 76, 79 (Tex.Civ.App.-Dallas 1968, writ ref'd n. r. e.). If there is no ambiguity, the construction of the written instrument is a question of law for the court. *Myers v. Gulf Coast Minerals Management Corp.,* 361 S.W.2d 193, 196 (Tex. 1962). We must interpret an unambiguous contract by determining the meaning that would be attached to it by a reasonably intelligent person when considering the words of the entire instrument along with the circumstances surrounding its negotiation. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518–19 (Tex. 1968). If a contract remains reasonably susceptible to more than one meaning after the court applies established rules of interpretation, the contract is ambiguous. However, if only one reasonable meaning clearly emerges, it is unambiguous. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951). Accordingly, we must interpret the language to determine whether the clause pertaining to commissions is a condition precedent or time of payment provision or whether it is ambiguous in that respect.

That clause reads: "*a commission for negotiating this lease agreement* of six percent (6%) of the total monthly rental as collected from tenant." The phrase shows that Stitt was to be paid for the negotiation of the lease, and that payment was to be prorated over a time equal to the expected life of the lease rather than in one sum. The only reasonable meaning of this language is that Stitt agreed to defer his payment over a period of time, but expected full payment under any circumstances.

Royal Park cites *Langman v. Vitullo,* 70 Pa. D & C 604 (1950), in which a lower court in Pennsylvania held that a broker was not entitled to a commission based on the rental for the whole term of the lease providing a five percent commission "for his services in negotiating the lease and the collection of the rent . . .," when the lessee vacated the premises after eight months of the five-year term lease. However, those facts are distinguishable from the present case in that the Pennsylvania court relied upon the wording of the contract specifying that commissions were payment for negotiating the lease *and* collecting the rent. In our case the contract reads "a commission *for negotiating this lease agreement* . . ." This phrase clearly shows that the commissions were in payment for the broker's services in negotiating the lease only. Although the evidence shows that Royal Park paid the rent to Sears through Stitt before the sublease was canceled, the sublease does not obligate Stitt to actively collect the rent.

This case is analogous to one in which a broker's commission for negotiating a sale of land is to be paid out of deferred payments evidenced by lien notes taken by the seller, and subsequently the seller accepts a reconveyance of the land in full satisfaction of the notes, the notes are regarded as fully paid. In such a case the broker cannot be deprived of his commission by an agreement of cancellation or release made by the seller and purchaser unless the agreement is entered into at the broker's request or with his consent. *Adams v. Johnson,* 298 S.W. 265, 267 (Tex. Com.App.1927, jdgmt. adopted). Unless

otherwise agreed, a broker need only produce a purchaser able and willing to buy on the owner's terms, and if completion of the sale is prevented by a mutual rescission of the owner and purchaser, still the broker is entitled to his commission. *Don Drum Real Estate Co. v. Hudson,* 465 S.W.2d 409, 411 (Tex.Civ.App.-Dallas 1971, no writ).

No reason exists for a distinction between the sale and lease of land which a broker has negotiated. *See Closner v. Gannaway,* 32 S.W.2d 523, 524 (Tex.Civ. App.-San Antonio 1930, no writ). Thus, we hold that under these facts Stitt did perform his part of the agreement by negotiating a lease between Royal Park and Sears and is entitled to payment.

In support of its contention that the phrase "as collected from tenant" creates a condition precedent, Royal Park cites *O'Boyle v. DuBose-Killeen Properties, Inc.,* 430 S.W.2d 273 (Tex.Civ.App.-Dallas 1968, writ ref'd n. r. e.). We regard *O'Boyle* as distinguishable. *O'Boyle* dealt with a sale of shopping center property in which the purchaser was concerned about continuation of leases by numerous tenants. The agreement provided that the leases to the various tenants were to be approved and accepted by the purchaser before the purchaser was bound to proceed with the closing of title. Accordingly, in that case we held that this approval was a significant factor in negotiation of the contract of sale, and because of the failure to approve the leases, the sale was never successfully negotiated. In this case, on the other hand, the lease agreement and surrounding circumstances do not demonstrate an intention not to complete the transaction unless a certain condition is met. In fact, the lease was successfully negotiated and lease payments were made for a full year before Sears and Royal Park alone decided to rescind and cancel the lease.

■ Even if the phrase "as collected from tenant" were interpreted as a source of payment creating a condition precedent, we do not agree that under these circumstances it constitutes a bar to recovery.

Other courts have recognized circumstances analogous to these and have held that a broker is entitled to his commissions notwithstanding failure of the condition precedent if the lessor gets the benefit of the obligation to pay the rent or if the lessor himself is responsible for failure of the condition. For example, although a broker's agreement required possession by the lessee prior to payment of commissions, a broker was entitled to commissions notwithstanding the fact that the lessee never acquired possession because the property was condemned. The court reasoned that since the lessor received a greater condemnation award because of the loss of future lease payments, he benefited from the broker's services and should be required to pay the commissions. *Polley v. Plainshun Corp.,* 8 A.D.2d 638, 186 N.Y.2d 295 (1959). Also, where a broker's agreement conditioned payment on possession by the lessee and the broker successfully negotiated a lease, it was decided that the lessor's acceptance of a surrender by the lessee prevented the condition precedent and should not deny the broker his commissions. *Allan S. Feldman & Co. v. Freeman,* 3 Misc.2d 651, 156 N.Y. S.2d 52 (1956). These cases are analogous to the situation herein, and we agree with the rationale of those opinions. This is not a case in which the lessee simply defaulted in the payment of rent. In this case Sears was responsible for failure of the condition because it agreed to the surrender of the sublease, and it obtained a benefit from the surrender in that the surrender was part of a transaction by which Sears was relieved of its obligation to pay the rent on the principal lease beyond the term of the sublease. Thus, we conclude that Sears should be required to pay the broker's commissions and that Royal Park is also liable under its indemnity agreement.

Accordingly, we hold that the trial court erred in rendering summary judgment for Royal Park and Sears and denying a summary judgment for Stitt and Miller. We reverse that judgment and remand the cause to the trial court with instructions to sustain the motion for summary judgment

of J. E. Stitt and Henry S. Miller Company against Sears, Roebuck & Company and Royal Park Fashions Company, Inc., for the present value of the six-percent (6%) commission on the total amount which would have been paid by Royal Park Fashions if the lease had not been canceled, allowing interest on past-due installments and discounting future installments for present payment and to determine and allow a reasonable attorney's fee, as provided in the lease.

Reversed and remanded with instructions.