Siegfried **POPPE**, et ux., Appellants,

v.

**CAMELOT PROPERTIES,
INC., Appellee.**

No. 14461.

Court of Appeals of Texas,
Austin.

May 21, 1986.

Rehearing Denied June 18, 1986.

Joseph Latting, Geoffrey Amsel, Shapiro, Edens & Cook, Austin, for appellants.

Ann A. Taylor, Weeks, Chapman & Buford, Austin, for appellee.

Before SHANNON, C.J., and KLINGEMAN * and CARROLL, JJ.

KLINGEMAN, Justice (Retired, Sitting by Assignment).

This is a suit for recovery of a real estate broker's commission by Camelot Properties, Inc., against Siegfried and Irmgard Poppe. Trial was to the court without a jury. Findings of fact and conclusions of law were not requested of, or filed by, the trial court. Judgment was rendered by the trial court in favor of Camelot Properties, Inc., against Siegfried and Irmgard Poppe, awarding Camelot Properties, Inc., a broker's commission in the amount of $10,800, attorney's fees, pre-judgment and post-judgment interest and costs of court. Defendant timely perfected an appeal.

In this opinion Camelot Properties, Inc., will be referred to as Camelot, plaintiff or appellee. Siegfried and Irmgard Poppe will be referred to as Poppe, defendant or appellant.

Appellant asserts two "no evidence" points of error in which he contends the trial court erred in (1) finding that appellee produced a buyer who was ready, able and willing to buy appellant's home under the terms of the listing agreement when there was no evidence to support the same, and (2) finding that the buyer and appellant had an affirmative agreement to wait for the expiration of the term of the listing agreement before entering into renewed contract negotiations for the purpose of avoiding payment of the broker's commission, there being no evidence to support the same.

In October 1982 appellant moved from Austin to Illinois and decided to sell his house located in Travis County. He was a personal friend of Ms. Kim Hunsucker who had been a neighbor to him in Austin. He knew that she was a real estate agent, and he decided to contact her about selling the house. Appellant agreed to list his Austin house with Ms. Hunsucker and her employer, Better Homes and Garden. In February 1983 Ms. Hunsucker changed employers, and appellant continued to list his property with her new employer, Camelot Properties, Inc., appellee herein. Appellant entered into two successive listing agreements with Ms. Hunsucker and her employer, Camelot. These listing contracts were basically the same, except with different dates and different expiration dates. These agreements listed a sales price of $215,000 and provided for a 6% broker's commission to be paid if appellee produced a purchaser during the term of the agreement, ready, willing and able to buy the property at the listed or agreed terms, or if the property was sold during the term of the agreement. The second agreement terminated on July 15, 1983, but further provided that the broker's commission would be paid if the property was sold during the term of the agreement, in this case by August 14, 1983.

Ms. Hunsucker prepared and submitted to appellant several offers for the purchase of the property, prior to the termination of the last listing agreement. Three of the offers provided for a sales price of $185,-000. Another offer which occurred after the expiration of the last listing agreement, but during the 30 day grace period, provided for a sales price of $195,000, but was contingent on appellant making repairs to the house. Each of the proffered contracts was rejected by appellant.

One of the rejected offers was extended by Peter K. Marquardt, the ultimate purchaser. On or about June 13, 1983, Marquardt contacted Ms. Hunsucker in Austin about the house. On or about June 25, 1983, Ms. Hunsucker telephoned appellant and told him that she had talked to Mr. Marquardt about the sale of the property and that she was preparing an offer from Mr. Marquardt. At such time appellant told her that he was an old friend of Mr.

---

* Before Fred V. Klingeman, Justice (retired), Fourth Court of Appeals, sitting by assignment.

See Tex.Rev.Civ.Stat.1812.

Marquardt and that he thought she was wasting her time, but that if she wished to continue negotiations with him, she could.

A contract of sale and purchase was prepared and was signed by Marquardt but was never signed by appellant.

On August 16, 1983, two days after the termination of the sales listing agreement with Camelot, appellant and Marquardt signed a contract of sale and purchase providing for a sales price of $180,000. The property was ultimately conveyed to Mr. Marquardt on or about December 22, 1983.

Camelot Properties, Inc., filed suit against the Poppes in County Court at Law No. 2 of Travis County asserting that plaintiff and defendant entered into a written agreement in which defendant agreed and contracted with plaintiff that plaintiff would have the sole and exclusive right and authority to sell the property under such listing; that plaintiff agreed to perform the usual services of a real estate agent in procuring a buyer for the defendant's property for a period of time which extended through July 15, 1983, with a grace period of 30 days thereafter; and that pursuant to such contract, plaintiff fully performed its obligation by producing Peter K. Marquardt as a prospective purchaser who was and is ready, willing and able to purchase defendant's property at a price and on the terms provided for in the real estate listing contract. Appellee further alleged that after plaintiff performed its part of the agreement, defendant and Marquardt entered into a plan and sales agreement for the sole purpose of avoiding the payment of commission by defendant to plaintiff; that such action constituted fraud and collusion; that defendant was requested to pay such commission but refused to do so; and that plaintiff for its services was entitled to a commission equal to 6% of the sale price. Plaintiff sought recovery for the amount of such commission, attorney's fees, costs of court and interest.

Defendant answered in the form of a letter which he prepared and mailed to the court. We will set forth the contents of this answer in some detail as it basically sets forth defendant's contentions.

The contents of such letter may be summarized as follows: (1) That after he moved to Illinois, he decided to sell his house in Austin; (2) That he knew that a neighbor of his, Kim Hunsucker, was a real estate agent; (3) That he first gave a listing agreement to another realtor; (4) That after this listing expired, Ms. Hunsucker contacted him and told him that his property could be sold quickly, and that on February 1, 1983, he signed a listing agreement with Ms. Hunsucker who was employed by appellee, Camelot; (5) That on June 26, 1983, Ms. Hunsucker called him and informed him that she had found a prospective purchaser in Peter Marquardt and was preparing a contract; (6) That he immediately informed Ms. Hunsucker not to waste her time on Peter Marquardt as they had been close personal friends for approximately 6 years; (7) That on or about June 28, 1983, Marquardt called him and told him that appellant's house was in run-down condition; (8) That Marquardt told him that he assumed Ms. Hunsucker was selling the house as a friend of appellant and not as a real estate agent; (9) That he told Marquardt that he could buy his house through Hunsucker and pay her commission, or wait until the contract expired and that they would talk about it then; (10) That on or about August 6, 1983, Ms. Hunsucker called him and informed him that she had a qualified buyer; (11) That he agreed to come to Austin and meet the buyer on August 11, 1983, (12) That after inspecting the house and examining the buyer's offer, he rejected such offer; (13) That he was shocked about the condition of the property and decided to negotiate directly with Peter Marquardt; (14) That Marquardt agreed to buy "as is"; (15) That since he and Marquardt were long time friends, it only took a handshake and a lawyer to prepare the document; and (16) That appellee was not the producing cause of the sale of the property and was unable to produce a ready, willing and able buyer during the . term of the contract.

Plaintiff at the trial presented the testimony of three witnesses: Ms. Kim Hunsucker; Mr. George Proch, a prospective purchaser for the property involved; and Ms. Ann Taylor, the attorney who represented plaintiff at the trial.

Defendant Poppe did not appear at the trial but was represented by counsel. Neither Poppe, the seller, nor the ultimate purchaser, Peter Marquardt, testified at trial. Defendant did not present any other witnesses.

Ann Taylor was the attorney for Camelot during the trial. She testified about the matter of attorney's fees and also introduced into evidence various documentary evidence as exhibits.[1]

Mr. George Proch, a one time prospective purchaser of the house, testified that he had signed a contract of purchase to buy the Poppe property during the summer of 1983 with an expiration date of November 1, 1983, and that he was ready, willing and able to buy the property at all times provided in the contract.

The bulk of the testimony at the trial was given by Ms. Kim Hunsucker. Her testimony may be summarized as follows: (1) That she was a duly licensed real estate agent and had been so for about five years; (2) That she is presently employed by Camelot and has been so employed for some time; (3) That Poppe first contacted her about selling the property in February 1983; (4) That shortly thereafter he entered into a multiple listing agreement with Camelot covering the sale of the property here involved, which contract provided for a commission of 6%; (5) That in actuality two agreements were entered into with Poppe for the sale of the property which were essentially the same except they had different expiration dates; (6) That the last listing provided for an expiration date of

July 15, 1983, with an additional 30-day grace period thereafter; (7) That during the terms of the agreements she advertised the property for sale, cleaned the house on several occasions, and held an open house; (8) That on June 13, 1983, she was contacted by Peter Marquardt about the purchase of the property, and that she showed Mr. Marquardt the property; (9) That thereafter she prepared a contract of purchase and sale, and Peter Marquardt signed it, and that he gave her an escrow check of $1500; (10) That Marquardt told her that he was a friend of Poppe but that he had never discussed the purchase of the property with Poppe; (11) That she subsequently contacted Poppe and told him that she had shown the property to Marquardt; (12) That Poppe told her he had never talked to Marquardt about the sale of the property; (13) That Poppe told her that she could go ahead and negotiate with Marquardt but basically he thought she was wasting her time; (14) That she prepared an earnest money contract for the sale of the property between Poppe and Marquardt which called for a purchase price of $185,000; (15) That Peter Marquardt signed such contract and that she also signed such contract as the real estate broker; (16) That she called Poppe that she was going to send the contract to him for his signature but that Poppe told her nct to send it to him and that Poppe never signed the contract; and (17) That she had also procured other ready, willing and able buyers during the term of the listing agreement, two of whom had signed contracts of sale and purchase. This included one with Carl W. Meyer and his wife for a sales price of $195,000 which Poppe refused to sign. The other contract was for a sales price of $185,000 in which Edward M. and Margaret Case were the purchasers, but which Poppe

---

1. The exhibits include: the two multiple listing contracts here involved; a number of contracts of sale and purchase signed by the prospective purchaser but not signed by Poppe; a demand letter written by plaintiff's attorney to Poppe; a letter from Ms. Hunsucker to Peter Marquardt dated June 29, 1983 enclosing an earnest money contract, a contract of sale and purchase dated

August 16, 1983 covering the property here involved signed by both Poppe and Marquardt providing for a sale price of $180,000; and a photostatic copy of a warranty deed from Siegfried Poppe and Irmgard to Peter Marquardt dated December 22, 1983 conveying the property involved.

refused to sign. In her opinion, both were ready, willing and able purchasers; (18) That prior to Poppe coming to Austin in August 1983, Poppe gave her a verbal commitment on the phone that he would accept the $195,000 contract; (19) That Poppe came to Austin on August 9, 1983, came by her house and picked up the contract, but that she did not see him again until August 11, 1983; (20) That at the time Poppe told her that he was not going to sign the contract; (21) That Poppe told her he already had a buyer and that the papers were being prepared in the attorney's office; and (22) That she did not know who the purchaser was until August 16, 1983 when she saw a moving van at the Poppe house and saw that Peter and Catherine Marquardt were moving in.

It is to be remembered that the case before us is a suit for recovery of a broker's commission tried in a county court at law without a jury; that no findings of fact or conclusions of law were requested of, or filed by the trial court; and that appellant's only points of error are "no evidence" points of error.

Our discussion herein of what we consider the applicable and controlling authorities will be divided into three general categories: (1) "No Evidence" Points of Error; (2) Findings of Fact and Conclusions of Law; and (3) Broker's Commission.

### "No Evidence" Points of Error

In determining a "no evidence" point, which is a question of law, we may consider only that evidence, if any, and the reasonable inferences therefrom, which viewed in its most favorable light, supports the trier of the fact's finding, and we must reject all evidence and inferences which are contrary to the finding. *Biggers v. Continental Bus System, Inc.*, 157 Tex. 351, 303 S.W.2d 359, 363 (1957); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696, 698 (1914).

In reviewing the record on "no evidence" points of error, this Court must consider only the evidence and reasonable inferences from the evidence, which viewed in their most favorable light support the trial court's judgment and must disregard all the evidence and inferences to the contrary. Estate of *Claveria v. Claveria*, 615 S.W.2d 164 (Tex.1981); *Bounds v. Caudle*, 560 S.W.2d 925 (Tex.1977); *Butler v. Hanson*, 455 S.W.2d 942, 944 (Tex.1970).

### Findings of Fact and Conclusions of Law

It is settled in Texas that in a non-jury trial where findings of fact and conclusions of law are not requested and none are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Lassiter v. Bliss*, 559 S.W.2d 353, 356 (Tex. 1977); *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex.1968); *City of Dallas v. Furrh*, 541 S.W.2d 271, 273 (Tex.Civ.App. 1976, writ ref'd n.r.e.); *Durr v. Newman*, 537 S.W.2d 323, 325 (Tex.Civ.App.1976, writ ref'd n.r.e.).

In such a case the trial court's judgment implies that all necessary fact findings were made by the trial court in support of the judgment. In determining whether there is any evidence to support the judgment and the implied findings of fact incident thereto, the appellate court can consider only the evidence that is most favorable to the issue and must disregard entirely that which is opposed to it. *Renfro Drug Company v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950).

### Broker's Commission

■ The general rule in Texas is that a broker who produces or procures a purchaser who is able and willing to buy on the owner's terms, is entitled to his commission if completion of the sale is prevented by fault of the owner or by mutual recission of the contract by the owner and the purchaser. *West Realty Investment Co. v. Hite*, 283 S.W. 481 (Tex.Com.App. 1926, judgmt. adopted); *Stevens v. Karr*, 119 Tex. 479, 33 S.W.2d 725, 727 (1930); *Stitt v. Royal Park Fashions, Inc.*, 546

S.W.2d 924, 927 (Tex.Civ.App.1977, writ ref'd n.r.e.).

▮ A real estate dealer whose efforts have resulted in the sale of property upon terms satisfactory to the vendor should not be deprived of his commission when, as a result of the bargaining between the vendor and vendee, the vendor agrees to accept a lesser price or different terms than those stated in the listing agreement. *Knight v. Hicks*, 505 S.W.2d 638 (Tex.Civ.App.1974, writ ref'd n.r.e.); *Volkman v. Wortham*, 189 S.W.2d 776 (Tex.Civ.App.1945, writ dism'd).

▮ It is not necessary that a broker should negotiate the sale when he has found, or he has introduced or given a name, of a purchaser who is able, willing and ready to purchase the property upon the terms named by the principal, and the principal has entered into negotiation with such purchaser and concluded a sale with him. *Shepard v. Wesson*, 266 S.W.2d 393 (Tex.Civ.App.1953, no writ).

Our Supreme Court in *Goodwin v. Gunter*, 109 Tex. 56, 185 S.W. 295 (1916) said:

It is a general doctrine that in order for a broker to be entitled to commissions under a contract stipulating for their payment in the event of his sale of given property upon stated terms, a purchaser must have been produced through his efforts, ready, able and willing to buy the property upon the contract terms; otherwise the contract is not fulfilled upon the broker's part and the commissions are therefore not earned. But the commissions are earned and the broker is entitled to their payment according to the contract if, while it is in force, he procures a purchaser to whom the owner directly makes a sale upon terms which are satisfactory to himself, though different from those limited to the broker and yielding the owner a less amount than that for which the broker was empowered to sell. This is but a rule of fairness and right. In such a case the owner received the full benefit of the broker's effort. Through the diligence of the broker a buyer is produced. Having interested a prospective buyer the broker is entitled to a fair opportunity of making a sale to him upon the terms authorized. That the owner, pending the broker's negotiation, may, in disregard or repudiation of his obligation to respect the broker's right to conclude the transaction, take the matter into his own hands, avail himself of the broker's effort, close a sale upon satisfactory terms, and yet deny the broker's right of compensation, is a proposition not to be countenanced.

*Goodwin v. Gunter, supra*, was set aside on other grounds on motion for rehearing in *Goodwin v. Gunter*, 109 Tex. 56, 195 S.W. 848 (1917), but the above set forth portion has been quoted and cited with approval in many later Texas decisions.

▮ After a thorough consideration of the record before us and the cases we regard as controlling, we have concluded that appellants' "no evidence" points of error cannot be sustained.

All of appellants' points of error have been considered, and all are overruled.

The judgment of the trial court is affirmed.